Montera v KMR Amsterdam LLC (2021 NY Slip Op 00805)





Montera v KMR Amsterdam LLC


2021 NY Slip Op 00805


Decided on February 09, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 09, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Judith Gische
Anil C. Singh, Tanya R. Kennedy, Manuel Mendez


Index No. 160550/17 Appeal No. 12046 Case No. 2019-5143 

[*1]Ken Montera etc., Plaintiff-Respondent,
v
KMR Amsterdam LLC, Defendant-Appellant.



Plaintiff appeals from the order of the Supreme Court, New York County (Shlomo S. Hagler, J.), entered June 12, 2019, which denied defendant's motion for summary judgment and granted plaintiff's motion to certify a class and subclass of present and former tenants of defendant's building.




Borah, Goldstein, Altschuler, Nahins & Goidel, P.C., New York (Paul N. Gruber of counsel), for appellant.
Newman Ferrara, LLP, New York (Roger A. Sachar, Jr., Lucas A. Ferrara and Jarred I. Kassenoff of counsel), for respondent.



SINGH, J. 


The primary issue on this appeal is whether defendant's alleged illegal scheme to deregulate the subject apartment after Roberts v Tishman Speyer Props., L.P. (13 NY3d 270 [2009])and Gersten v 56 7th Ave. LLC (88 AD3d 189 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012])were decidedand its continued failure to register the apartment are sufficient indicia of fraud to warrant review of the apartment history beyond the four-year lookback period. Supreme Court correctly found that plaintiff made a colorable claim of fraud which permits the review of the rental history outside the four-year lookback period. The order should be affirmed.
We disagree with the reasoning of our dissenting colleague who, while relying on Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332 [2020]),fails to squarely address the critical fact that the Regina Court stated that the cases before it involved apartments that were treated as "deregulated consistent with then-prevailing DHCR regulations and guidance" before the Court rejected that guidance in Roberts (35 NY3d at 350). The case before us concerns an apartment that was deregulated after the Court of Appeals issued its guidance in Roberts and we decided Gersten and where the owner allegedly had engaged in a scheme over many years to illegally deregulate the tenant's apartment and many other apartments in the building. Roberts brought groundbreaking change to rent regulation in New York City. The Court of Appeals held that apartments in buildings receiving benefits under New York City's J-51 tax incentive program remain subject to rent stabilization for at least as long as the building continues to enjoy J-51 benefits. Subsequently, in Gersten, we found that Roberts should be applied retroactively.[FN1]
Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332 [2020], supra) arose in Roberts's wake. Relying on Conason v Megan Holding LLC (25 NY3d 1 [2015]), Thornton v Baron (5 NY3d 175, 180 [2005]) and Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358, 366-367 [2010]), the Court of Appeals reiterated that
"review of rental history outside the four-year lookback period was permitted only in the limited category of cases where the tenant produced evidence of a fraudulent scheme to deregulate and, even then, solely to ascertain whether fraud occurred — not to [*2]furnish evidence for calculation of the base date rent or permit recovery for years of overcharges barred by the statute of limitations"

(35 NY3d at 355).[FN2]
Importantly, the Court in Regina recognized that each of the cases before it concerned apartments that were deregulated in accordance with then-prevailing DHCR regulations and guidance (35 NY3d at 350). The Court noted that
"the tenants took occupancy years prior to Roberts following a deregulation later revealed by that decision to have been improper, believing they were renting non-stabilized apartments at market rents. None of these tenants promptly challenged the deregulated status of their apartments and years — in some cases, over a decade — passed during which the tenants and their landlords renewed and renegotiated free-market leases" (id. at 350-351).
Accordingly, no colorable fraud claim had been made out.
Thus, in pre-Roberts cases where landlords relied on DHCR guidance there could be no fraudulent scheme to deregulate. This rule was explained by us in Matter of Park v New York State Div. of Hous. & Community Renewal (150 AD3d 105, 115 [1st Dept 2017], lv dismissed 30 NY3d 96 [2017]), where we found that DHCR rationally concluded that there was no basis to lookback beyond the four-year limitation period, as the owner did not engage in fraud when removing the apartment from rent regulation in 2005. We explained that the owner "was relying on DHCR's own contemporaneous interpretation of the relevant laws and regulations" (id.). In fact, we gave the owner safe harbor, finding that fraud was not committed before 2012, when Roberts was applied retroactively.
However, we have not extended this rule to cases decided after Roberts and Gersten. To the contrary, our jurisprudence holds that an owner may not flout the teachings of Roberts. In Kreisler v B-U Realty Corp. (164 AD3d 1117 [1st Dept 2018], lv dismissed 32 NY3d 1090 [2018]), we affirmed Supreme Court's declaration that the defendant owners engaged in a fraudulent scheme to remove the plaintiff tenants' apartment from rent regulation. The owner failed to notify the tenants that their apartments were subject to rent stabilization or to issue rent stabilized leases. The owner finally addressed deregulation only after its conduct was revealed by an anonymous complaint. We affirmatively "reject[ed] defendants' asserted reliance on a 'pre-Roberts' framework to justify their actions, given that the wrongdoing here occurred in 2010, after Roberts was decided" (id. at 1118). Similarly, in Nolte v Bridgestone Assoc. LLC (167 AD3d 498, 498-499 [1st Dept 2018]), we did not give the owner safe harbor under the pre-Roberts line of cases because the "defendant failed to promptly register the apartment and 30 other apartments in the building as rent-stabilized in March 2012, when the applicability of [Roberts] was clear."
We disagree with the dissent that the Kreisler and Nolte line of cases is no longer good law in light of Regina. This reading [*3]of Regina is overly broad and does not comport with this State's public policy recognizing the serious emergency in the residential housing market exacerbated by the deregulation of housing stock (see Emergency Tenant Protection Act (ETPA) § 2 [1974]) and the HSTPA).[FN3] Moreover, unlike Kreisler and Nolte, the four cases decided in Regina are model pre-Roberts cases. In fact, the issue framed by the Regina majority was "what is the proper method for calculating the recoverable rent overcharge for New York City apartments that were improperly removed from rent stabilization during receipt of J-51 benefits prior to our 2009 decision in [Roberts]" (Regina, 35 NY3d at 350 [emphasis added]). Regina does not grants an owner carte blanche in post-Roberts/Gersten cases to willfully disregard the law, by failing to re-register illegally deregulated apartments, enjoying tax benefits while continuing to misrepresent the regulatory status of the apartments, and taking steps to comply with the law only after its scheme is uncovered. Owners should not be incentivized to remove regulated housing from the statutory scheme by simply ignoring the law. It is axiomatic that ignorance of the law is not a defense for the failure to comply with unambiguous legal obligations (see Stauber v Antelo, 163 AD2d 246, 249 [1st Dept 1990]).
The dissent ignores our recent decision in 435 Cent. Park W. Tenant Assn v Park Front Apts., LLC (183 AD3d 509 [1st Dept 2020]).Citing to Regina,we stated that the fraud exception to the four-year lookback period applied both to a fraudulent scheme to deregulate and to a fraudulent overcharge scheme (id. at 510-511). Here, the dissent summarily concludes on an incomplete and pre-discovery record that there was no fraudulent scheme to deregulate. We disagree. Regina notes that "[f]raud consists of evidence [of] a representation of material fact, falsity, scienter, reliance and injury" (Regina, 35 NY3d at 356 n 7 [internal citations omitted]). The Regina court explains that in the regulatory context "willfulness means 'consciously and knowing charg[ing] . . . improper rent'" (id., quoting Matter of Levanant v State Div of Hous. & Community Renewal, 148 AD2d 185, 190 [1st Dept 1989]).This rule is well-settled in our case law. Assumptions regarding the regulatory status of an apartment may amount to "willful ignorance, which constitutes willful conduct, particularly since defendants are sophisticated property managers and owners" (Grady v Hessert Realty L.P., 178 AD3d 401, 405 [1st Dept 2019]; see also Crockett v 351 St. Nicholas Ave. LLC, 179 AD3d 486, 487 [1st Dept 2020] [owner failed to rebut presumption of willfulness as to rent overcharge by claiming that it believed its predecessor's J-51 application had been withdrawn and that the court could disregard DHCR's rent reduction order]; Smoke v Windermere Owners, LLC, 173 AD3d 500, 501 [1st Dept 2019] [owner failed to overcome the presumption of willfulness arising from rent overcharges and [*4]removal of the plaintiffs' apartments from rent regulation]).
Here, in 2003, defendant's predecessor applied for J-51 tax benefits for the building. Defendant acquired the building the following year. The J-51 tax benefits expired in or around June 2013. Defendant was required to re-register the apartments with DHCR, provide the building tenants with rent stabilized leases, and seek rent increases in accordance with rent regulations.
Plaintiff became the tenant in apartment 4E pursuant to a non-regulated lease dated March 10, 2010, for the monthly rent of $1,150. On July 28, 2010, defendant filed a high-rent destabilization exemption with DHCR, based on a 17% vacancy increase from the previous legal rent that pushed it above the then-applicable $2,000 threshold for deregulation. A free-market lease extension dated December 18, 2012, covering March 1, 2013 to February 28, 2014, set plaintiff's monthly rent at $1,350. Another free-market lease extension dated January 6, 2017, covering March 1, 2017 through July 31, 2018, set plaintiff's monthly rent at $1,595. Defendant finally re-registered the apartment in 2018.
We disagree with the dissent that there was a "mere lack of registration" and that there are "no facts" to support defendant's scheme to deregulate. The hallmarks of a fraudulent scheme to deregulate are present here.[FN4] Defendant deregulated the apartment after Roberts was decided and did not re-register with DHCR, despite receiving J-51 tax benefits after Gersten applied Roberts retroactively. During the four-year period preceding commencement of the lawsuit, plaintiff was still not given a rent-stabilized lease. Unlike in Park, where the owner promptly registered the apartment, defendant waited until 2018 to re-register the apartment, one year after the complaint in this case was filed alleging that defendant unlawfully deregulated the building's apartments — more than a decade after Roberts was decided and eight years after our decision in Gersten. Defendant's actions cannot be deemed to be prompt compliance. Rather, at this stage, plaintiff has sufficiently alleged a six-year scheme to illegally deregulate 27 units or approximately 32% of the building.
It bears emphasizing that defendant moved for summary judgment on a pre-discovery record. Notably, plaintiff was unable to obtain documents that had been requested before the motion for summary judgment relating to previous alleged major capital improvements and individual apartment improvements (see Stulz v 305 Riverside Corp., 150 AD3d 558, 558 [1st Dept 2017], lv denied 30 NY3d 909 [2018]).
Defendant's motion is supported by an affidavit by one of its members, who denies that fraud occurred. The member states that defendant did not intend to defraud tenants but believed that it had the right to high-rent deregulation after the previous tenant vacated the apartment in 2009. He claims that the deregulation was "based on a mistaken pre-Roberts belief" and "an administrative error." [*5]Significantly, no evidentiary proof is submitted supporting this conclusory and self-serving assertion. There is no answer in the record whether defendant is a sophisticated property owner who acted with willful ignorance based on false assumptions to perpetrate a fraud or whether defendant simply made a good faith mistake regarding the regulatory status of the building. Given that it was defendant who moved for summary judgment, before discovery, defendant's explanation is insufficient to make out a prima facie case warranting summary judgment.
For these reasons, we find that the apartment history beyond the four-year lookback period may be reviewed to determine whether fraud occurred.
Finally, Supreme Court providently granted class certification. Defendant's property tax records provided sufficient evidence of the number of deregulated units (CPLR 901[a][1]). "As to predominance and typicality, the predominant legal question involves one that applies to the entire class — whether the apartments were unlawfully deregulated pursuant to the Roberts decision", class actions are permitted "where damages differ[] among the plaintiffs" (Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 399 [2014]; see CPLR 901[a][2],[3]), and the same limitations period applies to all class members.
Accordingly, the order of the Supreme Court, New York County (Shlomo S. Hagler, J.), entered June 12, 2019, which denied defendant's motion for summary judgment and granted plaintiff's motion to certify a class and subclass of present and former tenants of defendant's building should be affirmed, without costs.
All concur except Gische, J. who dissents in part in an Opinion.
GISCHE, J., dissenting in part:
I disagree with my colleagues to the extent they find that this rent overcharge case presents a possible claim of fraud that should be allowed to proceed on that theory, with attendant discovery. I do not believe there is a colorable claim of fraud. As a result, I would limit plaintiff's claims to rent overcharges predicated on a base date rent in the amount defendant actually charged four years before the filing of the complaint plus allowable increases. This result, I believe, is required by the recent Court of Appeals decision in Matter of Regina Metropolitan Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332 [2020][Regina]), which presents sweeping analytical changes to the resolution of overcharge cases, like this one, that arose after Roberts v Tishman Speyer Props., L.P. (13 NY3d 270 [2009]). As more fully discussed below, Regina holds that the remedies for Roberts overcharge cases are those provided in the statutory and regulatory provisions applicable to rent stabilization. The Court of Appeals clearly rejected common-law remedies afforded in earlier Appellate Division cases. While the Court acknowledged that there can be a common-law fraud exception in a Roberts overcharge case, as there is in any overcharge claim, Regina makes [*6]it clear that this exception applies only in limited circumstances. Fraud in the context of all rent overcharge cases, including Roberts overcharge cases, is subject to the same rigor as any common-law fraud case, requiring a false representation, scienter, reliance and injury, none of which exists here (see Regina at 356, n 7). The majority reasons that a possible claim of fraud may exist here because defendant failed to register this apartment with the New York State Division of Housing and Community Renewal (DHCR) after it knew, or should have known, that registration was required by Roberts. While the failure to register a rent regulated apartment violates the rent stabilization laws and code, there are statutory remedies for such violations. Failure to register is not in itself a fraud. Nor should it justify access to broad discovery on the issue of fraud.
Roberts rent overcharge claims are based upon a landlord having removed an apartment from rent stabilization through luxury decontrol, while at the same time receiving J-51 tax benefits. DHCR guidance originally permitted deregulation under these circumstances. In Roberts, however, the Court of Appeals rejected the agency's position, holding instead that as long at the J-51 benefit was in place, the landlord was precluded from removing the apartment from rent stabilization. Roberts was followed by years of litigation about how to resolve such overcharge claims. In Regina the Court of Appeals acknowledged the "understandable confusion" about how Roberts should be implemented (Regina at 357) and set forth an analytical framework by which to resolve many of the open questions. The Court has clarified that in Roberts cases, review of an apartment's rent history outside the four-year lookback period is permitted only where the tenant can prove a common-law fraud, that is a fraudulent scheme to deregulate the apartment, and then only to prove the scheme, not to furnish evidence for calculation of the base date rent (Regina at 355). At bar, defendant met its prima facie burden of showing that, at its core, plaintiff is asserting a Roberts overcharge claim. The rent that defendant actually charged four years prior to plaintiff's filing of this complaint is, therefore, the base date rent for purposes of calculating plaintiff's overcharge claim. In opposition, plaintiff has not presented any indicia of fraud that would permit review of the apartment's rent history before the lookback period, let alone opening this case to broad discovery on whether any such fraud occurred.
The decision that defendant appeals from was rendered by Supreme Court on June 14, 2019, before Regina was decided on April 2, 2020. Both parties agree that this case is governed by pre-HSTPA law because it was commenced and pending prior to the HSTPA's effective date [FN5]. Both sides also agree that Regina represents a sea-change in the law, but each side construes Regina differently. Plaintiff claims Regina left open the issue of [*7]whether an owner's failure to re-register a rent stabilized apartment removed from rent regulation constitutes a fraud that allows for a lookback beyond four years. Defendant argues that overcharge claims are only subject to a four-year lookback, and the rent history for an apartment before that time cannot be considered. It claims that failure to register an apartment, without more, does not constitute fraud.
The last registered rent (LRR) for this apartment was in 2009, before Roberts, at a rent of $1,779.71 per month. The tenant then in occupancy, however, was charged and paid a lower, preferential rent of $1,200 per month. Defendant had followed the same practice of charging less than the legal rent with other tenants in the past. Sharham Yaghoubzadeih, defendant's principal, claims that the rent was reduced because it was difficult to keep the building occupied due to the building's location and the economy.
When apartment 4E became vacant in 2009, defendant applied a vacancy increase of 17%, causing the rent to increase to $2,082.26, which was above the high-rent deregulation threshold of $2,000 then in effect. Shortly thereafter, defendant rented the apartment to plaintiff at a rent of $1,150 per month. The March 10, 2010 lease that defendant offered plaintiff was a nonregulated lease. Although defendant was receiving J-51 tax benefits and those benefits did not expire until June 2013, the lease makes no mention of this fact. Thereafter the parties continued to enter into nonregulated lease renewals, so that by 2017 plaintiff's rent had increased to $1,595 a month for the lease term ending July 31, 2018. Plaintiff commenced this action on November 29, 2017 alleging an overcharge, and asserting fraud claims, not only on his behalf, but also on behalf of other similarly situated tenants in the building. Defendant subsequently offered plaintiff a rent stabilized renewal lease dated May 1, 2018. The rent stabilized lease set the legal rent at $2,464.27, but charged plaintiff a temporary preferential rent of $1,595 per month.
Plaintiff claims, generally, that these events and circumstances indicate defendant's fraudulent scheme to deregulate apartment 4E in 2009. Plaintiff also claims that defendant's persistence in failing to register the apartment after this Court's decisions in Nolte v Bridgestone Assoc. LLC (167 AD3d 498 [1st Dept 2018]), Kreisler v B-U Realty Corp. (164 AD3d 1117 [1st Dept 2018], lv dismissed 32 NY3d 1090 [2018]) and Matter of Park v New York State Div. of Hous. & Community Renewal (150 AD3d 105 [1st Dept 2017], lv dismissed 30 NY3d 961 [2017]) is further evidence of defendant's fraudulent scheme. In each of those cases, all decided before Regina, this Court referred to the owner's failure to reregister an improperly deregulated apartment as a factor in deciding whether to allow examination of the apartment's rent history beyond the four-year period set forth in former CPLR 213-a.
Defendant agrees that plaintiff's [*8]tenancy is rent stabilized. Yaghoubzadeih states that defendant only stopped registering the rent in 2009 when it exceeded $2,000 a month and defendant believed that registration was no longer required. Yaghoubzadeih denies that defendant had any intention of fraudulently deregulating the apartment. Yaghoubzadeih emphasizes that plaintiff's initial rent of $1,150 was not only less than the LRR, but also was less than the registered, preferential rent the previous tenant paid. Defendant maintains that there is no basis for the Court to consider the apartment's rent history prior to November 29, 2013, the base date, because there is no fraud.
The Court of Appeals's decisions in Regina and Roberts require a conclusion that that Roberts overcharge cases are, in general, not fraud cases and the remedy for an apartment illegally deregulated while the owner was in receipt of J-51 tax benefits lies in the rent stabilization law, not in the common law. Consequently, "an overcharge resulting from improper (but non-fraudulent) luxury deregulation [does not] warrant[] anything but the application of the standard lookback provisions," i.e. under former CPLR 213-a, four years prior to the commencement of the overcharge action (Regina at 360). If the overcharge is proved, the tenant may recover an overcharge award (Rent Stabilization Law of 1969 [Administrative Code of City of NY § 26-516[a][2] [RSL]), compensating the tenant for actual damages. Although a tenant may also recover treble damages, a shorter two-year statute of limitations applies (RSL § 26-516[a][2][under the new law this is now six years]). Moreover, treble damages are not only unavailable where the landlord disproves willfulness: "a finding of willfulness 'is generally not applicable to cases arising in the aftermath of Roberts'" (Regina at 356, quoting Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 398 [2014]).
Prior to Regina there was a great deal of confusion about what should be used as the base date in a Roberts overcharge case. While some courts strictly followed former CPLR 213-a, only considering the rent charged four years prior to the commencement of the overcharge action (see e.g. Reich v Belnord Partners, LLC, 168 AD3d 482 [1st Dept 2019], affd sub nom Regina, 35 NY3d 332 [2020]), other courts engaged in a reconstruction of the rent history (see Taylor v 72A Realty Assoc., L.P. (151 AD3d 95, 105-106 [1st Dept 2017]). Some courts were of the view that the very act of deregulation while receiving J-51 benefits was itself evidence or an indicia of fraud. The reasoning in Regina, however, necessarily rejects this view. None of the landlords in Regina timely registered the subject apartments. The absence of timely registration is, in fact, the hallmark of Roberts overcharge claims, because in each case the landlord removed the apartment from rent stabilization and believed, albeit incorrectly, that because the apartment was legitimately removed from rent regulation, registration [*9]was no longer required. Consequently, the mere lack of registration cannot set the predicate foundation for a fraud-based claim. In other words, if the majority were correct, all Roberts overcharge cases would be fraud cases. Clearly, the analysis in Regina is antithetical to that result. Furthermore, Regina refers to CPLR 213-a as a statute of repose, rather than a conventional statute of limitations. In doing so, the Court clarifies that CPLR 213-a not only fixes the date by which the right must be asserted, but also specifies the remedy. Regina expressly rejected prior decisions where courts had devised other common-law remedies for a Roberts claim as, for instance, this Court did in Taylor. Regina also clarifies that the carve-out for fraud, as described in Thornton v Baron (5 NY3d 175 [2005]), Matter of Grimm v State Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358 [2010]), and Conason v Megan Holding, LLC (25 NY3d 1 [2015] [collectively Thornton cases]), does not usually apply to Roberts cases because it is not "necessary to recognize an additional common-law exception that would create or increase the amount of overcharge damages in order to give proper effect to Roberts" (Regina at 360).
In distinguishing Thornton cases from Roberts cases, the Court explained that Thornton cases typically exhibit the hallmarks of common-law fraud, which are "a representation of material fact, falsity, scienter, reliance and injury" (Regina at 356, n 7 [internal quotation marks omitted]). Because Thornton involved a fraudulent scheme to deregulate, a "limited common-law exception" evolved to allow review of an apartment's rent history outside the four-year lookback period (Regina at 354). However, as Regina instructs, in the absence of common-law fraud, former CPLR 213-a is strictly applied and consideration of the rent history beyond the four-year lookback period is not permitted (CPLR 213—a; see Conason v. Megan Holding LLC, 25 NY3d 1). The Court of Appeals observed that even a "potentially inflated base date rent, flowing from an overcharge predating the limitations and lookback period, [is] proper in the absence of fraud" (Regina at 360). While sometimes this cuts in favor of the tenant and sometimes in favor of the landlord, the Court of Appeals reasoned that the salutary purpose of the statute is served.[FN6] Thornton (5 NY3d 175 [illusory tenancy to circumvent rent stabilization]), Matter of Grimm (15 NY3d 358 [tenant charged an illegal rent, but told it would be reduced if they paid for improvements and repairs]), and Conason v Megan Holding, LLC (25 NY3d 1 [unrefuted proof of fraud in the record]), provide bold examples of fraudulent schemes by owners. In such cases the rent charged four years prior to the commencement of the overcharge action was unusable because it was clearly unreliable or illegal, and the fabricated rent was an integral part of the fraudulent scheme to remove the apartment from the protections of rent stabilization[*10]. Consequently, in Thornton cases, application of DHCR's default formula was necessary to ascertain the base date rent because the rent actually charged is fictitious (Grimm, 15 NY3d at 366 and n 1).
I believe that no facts have been presented by plaintiff to support his claim that defendant engaged in a fraudulent deregulation scheme to remove apartment 4E from the protections of the rent stabilization law (Matter of Park, 150 AD3d at 114-115). Although defendant intentionally deregulated the apartment in 2009 when the rent increased above the high-rent threshold, defendant's principal avers that it did so consistent with the practice endorsed by DHCR at that time. Plaintiff fails to raise any inference that this is untrue and that there was a fraudulent scheme within the meaning of Grimm and Thornton (see Matter of Boyd v New York State Div. of Hous. & Community Renewal, 23 NY3d 999 [2014]).
My reading of Regina is that plaintiff can still recover his actual damages, but they are limited to "the increases added to the market base date rent that were over the legal limits during the recovery period" (Regina at 357) in other words, the rent on November 29, 2013, plus allowable guideline increases. Although plaintiff infers that this will bestow a windfall on defendant because he cannot challenge the 2009 LRR, this result is something that was carefully considered by the Court in deciding Regina:
"[T]he limitations provisions — in order to promote repose — precluded consideration of overcharges prior to the recovery period (former RSL § 26-516[a][2]; former CPLR 213-a), and it is clear from Boyd that use of a potentially inflated base date rent, flowing from an overcharge predating the limitations and lookback period, was proper in the absence of fraud" (Regina at 360).
I disagree with the majority's conclusion that the deregulation of the apartment in 2009, following Roberts, factually distinguishes this case from those within Regina's reach or that it otherwise indicates fraud.[FN7] Roberts expressly stated that it was leaving open the issue of whether its ruling was retroactive (Roberts, 13 NY3d at 287). No appellate court held that Roberts was retroactive until 2011, when this Court decided Gersten v 56 7th Ave. LLC (88 AD3d 189 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012]). The Court of Appeals only first recognized Gersten's retroactivity ruling in 2020, in Regina (35 NY3d at 350). Thus, when the apartment was originally deregulated, the law was, at best, in flux. The majority embraces plaintiff's further argument that defendant's failure to register with DHCR after this Court's decisions in Nolte (167 AD3d 498), Kreisler (164 AD3d 1117]) and Matter of Park (150 AD3d 105), is itself evidence of fraud and that we cannot allow defendant to avoid compliance with the law. I believe that Regina, with its robust requirements for finding fraud in Roberts' overcharge cases has sub silentio overruled this authority.
I fully recognize [*11]that an owner's failure to register the premises with DHCR is a violation of the rent stabilization laws and code, but there is an independent statutory remedy for such transgressions:
"The failure to properly and timely comply, on or after the base date, with the rent registration requirements . . . shall, until such time as such registration is completed, bar an owner from applying for or collecting any rent in excess of: the base date rent, plus any lawful adjustments allowable prior to the failure to register" (Rent Stabilization Code (RSC) [9 NYCRR] § 2528.4).
Once the late registration is filed this "shall result in the elimination, prospectively, of such penalty" (id.). Where the increases in rent were lawful but for the failure to timely register, the rent collected in excess of the LRR at any time prior to the filing of the late registration is not an overcharge (id.). RSL § 26-517(e) specifies the remedy. It provides that "[t]he failure to file a proper and timely . . . rent registration statement" precludes an owner from collecting rent increases until a registration is filed" (see Regina at 358, n9). Defendant's failure to register in itself does not permit the court's review of the rent history of this apartment prior to November 29, 2013, which is essentially what the "reconstruction method" allowed (id. at 358). Since there is already a statutory remedy for nonregistration, there is no reason to devise an alternative method of relief.
While I believe that Regina provides a basis for granting partial summary judgment to the landlord dismissing the fraud claim and determining the base date rent in this case to be the rent actually charged on November 29, 2013, this record does not allow for a determination of whether the increases in rent thereafter were made in accordance with the allowable rent stabilization guideline increases. Consequently, I would permit the overcharge complaint to proceed, but limited to overcharges, if any, that occurred following November 29, 2013.
Order, Supreme Court, New York County (Shlomo S. Hagler, J.), entered June 12, 2019, affirmed, without costs.
Opinion by Singh, J. all concur except Gische, J. who dissents in part in an Opinion.
Gische, J.P., Singh, Kennedy, Mendez, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 9, 2021



Footnotes

Footnote 1: Rent Stabilization Law of 1969 (Administrative Code of NY) former § 26-517(a)(2) and former CPLR 213—a set a four-year limitations period for actions alleging rent overcharge. Under those provisions, a tenant who prevailed on a Roberts claim was entitled to recoup only rent overcharges that accrued in the four years before the filing of the complaint (see e.g. Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 149 [2002]). The beginning date for the calculation of recoupment is known as the "base date."
Footnote 2: In 2019, the legislature enacted the Housing Stability and Tenant Protection Act (L 2019, ch 36) (HSTPA). As relevant here, part F of the HSTPA includes amendments that, among other things, extend the statute of limitations, alter the method for determining legal regulated rent for overcharge purposes and substantially expand the nature and scope of owner liability in rent overcharge cases (see L 2019, ch 36, part F). This case is governed by pre-HSTPA law.
Footnote 3: Pre-HSTPA, the New York State legislature had declared a serious public emergency that existed "in the housing of a considerable number of people" (see Emergency Tenant Protection Act (ETPA) § 2 [1974]). Under legislative findings the ETPA states, in relevant part, that "a substantial number of persons residing in housing not presently subject to the provisions of this act or the emergency housing rent control law or the local emergency housing rent control act are being charged excessive and unwarranted rents and rent increases" and that "the transition from regulation to a normal market of free bargaining between landlord and tenant, while the ultimate objective of state policy, must take place with due regard for such emergency" (id.). In the HSTPA, the legislature reiterated that the "serious public emergency. . . continues to exist" (see L 2019, ch 36, part D). It also "recognize[d] that severe disruption of the rental housing market has occurred and threatens to be exacerbated as a result of the present state of the law in relation to the deregulation of housing accommodations upon vacancy" (id.).

Footnote 4: Even if common-law fraud must be shown to establish a scheme to defraud, the elements of fraud have been met at this juncture to warrant denial of summary judgment (see Conason v Megan Holding LLC, 25 NY3d 1, 15-16 [2015], supra [owner engaged in a strategy to illegally remove apartments from rent stabilization protection]). It is undisputed that defendant made a misrepresentation of fact that the apartment was a free market rental. Undisputedly, the representation was false, as the apartment had been rent stabilized at least since 2012. Issues of fact are raised as to scienter. Plaintiff maintains that defendant knowingly engaged in a six-year illegal scheme to deregulate the building after Roberts and Gersten. An issue of fact is raised whether plaintiff justifiably relied upon defendant's omission of a material fact, that the apartment was subject to rent stabilization, and that there was justifiable reliance by plaintiff to his detriment upon defendant's representation that the apartment was a free-market rental and not a rent regulated apartment.

Footnote 5: The Housing Stability and Tenant Protection Act and Tenant Protection Act (L 2019, ch 36) (HSTPA), which brought sweeping changes to the rent regulation laws, became effective in June 2019.

Footnote 6: In this case the rent actually charged four years preceding the filing of the complaint is less than the LRR. Nonetheless, it is the rent actually charged that is the base date rent from which to determine if there has been an overcharge.

Footnote 7: Roberts was decided in October 2009. It is unclear when in 2009 the landlord actually deregulated the apartment.