**Clermont York 82nd St. LLC v Zgodny**

2025 NY Slip Op 34773(U)

December 31, 2025

Civil Court of the City of New York, New York County

Docket Number: L&T 315846/24

Judge: Clinton J. Guthrie

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: HOUSING PART D
------------------------------------------------------------------X
CLERMONT YORK 82ND ST. LLC,
                                                                Index No. L&T 315846/24

                        Petitioner,

            -against-                                   **DECISION/ORDER**

EJ ZGODNY, JOHN DOE, JANE DOE,

                        Respondents.
------------------------------------------------------------------X
Present:

        Hon. CLINTON J. GUTHRIE
            Judge, Housing Court

Recitation, as required by CPLR § 2219(a), of the papers considered in the review of petitioner's motion for summary judgment, or, in the alternative, to strike respondent's first through twenty-first affirmative defenses and four counterclaims and for summary judgment (seq. 2), respondent's cross-motion to dismiss, or, in the alternative, to consolidate/remove this proceeding to Supreme Court, or, in the alternative, to stay this proceeding (seq. 3), and petitioner's order to show cause for use and occupancy pendente lite (seq. 4):

| Papers | Numbered |
|---|---|
| Notice of Motion & All Documents Annexed…………….......  | 1 (NYSCEF #21-38) |
| Notice of Cross-Motion & All Documents Annexed………....... | 2 (NYSCEF #39-51) |
| Affirmation in Opposition & Exhibit Annexed..……….......... | 3 (NYSCEF #52-53) |
| Respondent's Supplemental Letter Brief………………….......... | 4 (NYSCEF #57) |
| Petitioner's Supplemental Letter Briefs & Exhibits Annexed…… | 5 (NYSCEF #58-61) |
| Order to Show Cause & All Documents Annexed………………. | 6 (NYSCEF #66-79) |

Upon the foregoing cited papers, the decision and order on petitioner's motion, respondent's

cross-motion, and petitioner's order to show cause, consolidated for determination herein, is as

follows.

PROCEDURAL HISTORY

        This summary holdover proceeding based upon a 15-Day Notice of Termination alleging

1

[* 1]

that respondent failed to renew his rent-stabilized lease was commenced in September 2024. Counsel for respondent appeared and interposed an answer with counterclaims in December 2025. In January 2025, petitioner made its motion for summary judgment or to strike respondent's affirmative defenses and counterclaims, and upon such striking, for summary judgment. Respondent opposed petitioner's motion and made a cross-motion to dismiss, or to consolidate/remove the proceeding to Supreme Court, or to stay the proceeding thereafter. The court initially heard argument on the motions on April 24, 2025.

In May 2025, after the motions were sub judice, both parties submitted supplemental letter briefs without first seeking permission of the court. The court, sua sponte, restored the motions and, after conference and further argument, permitted the filing and consideration of a portion of the supplemental letter briefs on May 30, 2025 (*see* Court Notice dated May 30, 2025 [NYSCEF Doc. 65]).

DISCUSSION/CONCLUSION

The court notes at the outset that the parties have been litigating the issues underlying this proceeding since at least 2012. A prior nonpayment proceeding, Index No. L&T 73941/12, spanned twelve years and involved two full appeals to the Appellate Term, First Department (*see Clermont York Assoc. LLC v Zgodny*, 84 Misc 3d 133[A], 2024 NY Slip Op 51742[U] [App Term, 1st Dept 2024]; *Clermont York Assoc. LLC v. Zgodny*, 42 Misc 3d 143[A], 2014 NY Slip Op 50257[U] [App Term, 1st Dept 2014]).

Petitioner's central claim in this proceeding is that respondent failed to renew a rent-stabilized renewal lease that petitioner alleges was served upon respondent in accordance with Rent Stabilization Code (RSC) § 2523.5 (9 NYCRR § 2523.5). Petitioner's Notice of

2

[* 2]

Termination states that the proposed renewal lease was offered "at the legal regulated rent authorized under [the Rent Stabilization] Code and the Rent Stabilization Law and otherwise upon the same terms and conditions as [the] expiring lease." (NYSCEF Doc. 3). Petitioner annexes the proposed lease offer to its summary judgment motion. The offer, dated May 27, 2024, acknowledges that petitioner failed to timely offer the last renewal lease and provides respondent options for renewal set out in RSC § 2523.5(c)(1). That provision permits a tenant to renew either "on the date a renewal lease would have commenced had a timely offer been made, or on the first rent payment date occurring no less than 90 days after the date that the owner does offer the lease to the tenant." (9 NYCRR §§ 2523.5(c)(1)(i)-(ii); *see also Santorini Equities, Inc. v Picarra*, 72 AD3d 73 [1st Dept 2010]). While respondent raises certain jurisdictional defects in his cross-motion to dismiss, the primary dispute between the parties concerns the legal regulated rent and increases incorporated in the renewal offer.

The court will first assess respondent's CPLR § 3211 motion to dismiss, as it may render petitioner's motion moot (*see Datta v Terrapin Indus., LLC*, 2011 NY Slip Op 33562[U] [Civ Ct, Queens County 2011]). The motion seeks dismissal pursuant to CPLR §§ 3211(a)(1), (2), (7), and (8). The court will briefly address requests for dismissal pursuant to CPLR §§ 3211(a)(2) (lack of subject matter jurisdiction) and (8) (lack of personal jurisdiction). Respondent argues that this court lacks subject matter jurisdiction because respondent did not have an initial rent-stabilized lease. While this may be a defense to petitioner's cause of action, Housing Court is "vested with subject matter jurisdiction over housing matters by statute (N.Y. City Civ. Ct. Act § 110)." (*170 West 85th Street Tenants Assn. v Cruz*, 173 AD2d 338, 339 [1st Dept 1991]; *see also 433 West Assocs. v Murdock*, 276 AD2d 360, 360-361 [1st Dept 2000]; *Williamsbridge-3067*

3

[* 3]

*Realty LLC v Ramos*, 86 Misc 3d 130[A], 2025 NY Slip Op 50975[U] [App Term, 1st Dept 2025]).  Thus, the court does not find that it lacks subject matter jurisdiction over this summary holdover proceeding seeking possession of the subject premises (*see* NYC Civ. Ct. Act § 110(a)(5)).

As for personal jurisdiction, respondent makes no specific challenge to the service of the notice of petition and petition.  Instead, respondent cursorily states that he was not served with the renewal lease at issue herein.  However, only service of the pleadings implicates personal jurisdiction (*see Eight Assocs. v Hynes*, 102 AD2d 746 [1st Dept 1984], *affd* 65 NY2d 739 [1985]).  A valid affidavit of service creates a presumption of proper service and a viable challenge to service requires a "sworn nonconclusory denial" to warrant a traverse hearing (*NYCTL 1998-1 Trust & Bank of N.Y. v Rabinowitz*, 7 AD3d 459, 460 [1st Dept 2004]).  As no such denial of service of the notice of petition and petition is presented by respondent, the request for dismissal upon lack of personal jurisdiction is denied.

Respondent's arguments pursuant to CPLR §§ 3211(a)(1) (defense founded upon documentary evidence) and (7) (failure to state a cause of action) relate to the propriety of petitioner's renewal lease offer.  On a CPLR § 3211(a)(7) motion, the petition "must be construed in the light most favorable to [petitioner] and all factual allegations must be accepted as true." (*Burrows v 75-25 153rd St., LLC*, 44 NY3d 74, 83 [2025]).  Nonetheless, dismissal will result when the plaintiff or petitioner "has not stated a claim cognizable at law." (*Basis Yield Alpha Fund [Master] v Goldman Sachs Group, Inc.*, 115 AD3d 128, 136 [1st Dept 2014]; *see also Connaughton v Chipotle Mexican Grill, Inc.*, 29 NY3d 137, 142 [2017]).  A CPLR § 3211(a)(1) motion founded upon documentary evidence will only be granted where the evidence

4

[* 4]

"utterly refutes [the petitioner's] factual allegations, conclusively establishing a defense as a matter of law." (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *see also Art & Fashion Group Corp. v Cyclops Prod., Inc.*, 120 AD3d 436 [1st Dept 2014]).

In a failure to renew holdover involving a rent-stabilized tenancy, it is petitioner's burden to prove that the renewal offer was based on a lawful rent amount (*see Ink 967-969 Willoughby, LLC v Cordero*, 74 Misc 3d 128[A], 2022 NY Slip Op 50063[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2022]).  The Rent Stabilization Code provides that the renewal offer shall be "at the legal regulated rent permitted for such renewal lease and otherwise on the same terms and conditions as the expiring lease" (RSC § 2523.5(a) (9 NYCRR § 2523.5(a))).  A renewal offer that includes a rent that exceeds the legal regulated rent justifies a tenant's refusal to sign the renewal lease (*see Cordero*, 2022 NY Slip Op 50063[U], *1-2; *Lexford Props., L.P. v Alter Realty Co., Inc.*, 31 Misc 3d 142[A], 2011 NY Slip Op 50859[U] [App Term, 1st Dept 2011]).

The history of respondent's tenancy is tied up with the J-51 tax abatement program and the seminal appellate caselaw surrounding it.  The Court of Appeals held in *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270, 286 [2009] that rent-stabilized units cannot be luxury decontrolled while the building is subject to a J-51 tax abatement, notwithstanding prior DHCR (New York State Division of Housing and Community Renewal) guidance to the contrary.  Thereafter, the Appellate Division, First Department, in *Gersten v 56 7th Ave. LLC*, 88 AD3d 189 [1st Dept 2011], *appeal withdrawn*, 18 NY3d 954 [2012], held that the *Roberts* decision was to be given retroactive effect.  At the time of respondent's first lease, in 2004, petitioner considered the subject apartment to have been luxury deregulated and the initial rental agreement was in the form of a free-market lease (*see* NYSCEF Doc. 42).  Nonetheless, petitioner was in

5

[* 5]

receipt of J-51 benefits at the time, as petitioner concedes in its opposition papers (*see* Marinos Aff., ¶¶ 20-24 [NYSCEF Doc. 52]).

Petitioner claims that after *Roberts*, it re-registered the subject premises as rent stabilized in 2012. According to the DHCR rent registrations annexed by the parties, the last lease in effect between the parties had a term of February 1, 2012 to January 31, 20213 at a legal regulated rent of $4,150.00 per month (*see* NYSCEF Docs. 30 and 51).[1] At the time of the last lease, a class action lawsuit brought by tenants in the subject building seeking declaratory and injunctive relief regarding the regulatory status and rents charged by petitioner's predecessor was pending in New York County Supreme Court under Index No. 101150/10. The class action lawsuit was settled and ultimately finalized in 2020 (*see* NYSCEF Docs. 45-46). However, petitioner asserts that respondent opted out of the class prior to settlement and respondent's attorneys do not directly contest this assertion (though neither side offers proof of the same). Whatever the potential effect of the Supreme Court settlement on the rent setting for this apartment, respondent has demonstrated that he never had an initial *rent stabilized* lease, with required rider, despite petitioner's receipt of J-51 benefits when respondent became a tenant and through the expiration of his last lease in January 2013. In *Cordero*, the Appellate Term, Second Department affirmed the dismissal of a failure to renew holdover proceeding where there were irregularities in the initial rent-stabilized lease, including an inflated rent and the lack of both a 1-or-2-year option

---

[1] Petitioner's registration is from January 2025 and shows certain amendments to the registration that were filed in 2021. Respondent's registration is from November 2012. However, both registrations list the 2/1/12-1/31/13 rent as $4,150.00. The court considers the rent history here for the specific purpose of determining of propriety of the legal regulated rent in the lease renewal offer at issue, not for the assessment of any potential overcharge damages (*see Matter of Syllman v New York State Div of Hous. & Community Renewal*, 233 AD3d 977, 979 [Retroactive application of HSTPA [Housing Stability and Tenant Protection Act] amendments to assess overcharge damages is barred by *Regina*, while recourse to the amendments is permitted solely to calculate the legal regulated rent]; *720 Riverside Owners Corp. v Moghadam*, 87 Misc 3d 133[A], 2025 NY Slip Op 51896[U] [App Term, 1st Dept 2025]).

and the required rider (*see Cordero*, 2022 NY Slip Op 50063[U], *1; *see also Housing Dev. Assoc. LLC v Gilpatrick*, 27 Misc 3d 134[A], 2010 NY Slip Op 50740[U] [App Term, 1st Dept 2010]).  Petitioner references a "J-51 Rent Registration Initiative" FAQ from DHCR suggesting that landlords treating J-51 apartments as deregulated before *Roberts* must re-register them as rent stabilized and provide each tenant with a stabilized renewal lease offer prior to the expiration of the current lease (*see* NYSCEF Doc. 53).  However, neither *Roberts* nor the Court of Appeals' later decision in *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332 [2020] permit landlords who had mistakenly treated apartments as deregulated while in receipt of J-51 benefits to disregard the law (*see Montera v KMR Amsterdam LLC*, 193 AD3d 102, 106 [1st Dept 2021).

Here, petitioner, after a decade-plus of litigation in the prior nonpayment proceeding, sent respondent a cover letter proposing renewal lease options corresponding to those in RSC § 2523.5(c)(1).  However, the offered lease renewals annexed to petitioner's papers: (1) stated a prior legal regulated rent that respondent had never paid ($4,177.72); (2) contained no rider explaining how the rent was calculated; and (3) provide no explanation as to why a rent-stabilized *renewal* lease was served when no initial rent stabilized lease had ever been executed.  After *Roberts and Gersten*, landlords in receipt of J-51 benefits were "required to re-register the apartments with DHCR, provide the building tenants rent-stabilized leases, and seek rent increases in accordance with rent regulations." (*Montera*, 193 AD3d at 108).  The purported legal regulated rent upon which the increases incorporated in the renewal lease offers to respondent were based was never "previously established" in any lease executed by respondent (*see* 9 NYCRR § 2521.2(a); *Matter of Bandil Farms Inc. v New York State Div. of Hous. &*

7

[* 7]

*Community Renewal*, 190 AD3d 403, 405 [1st Dept 2021]).

To the extent that petitioner alleges that the amount is based on an MCI (Major Capital Improvement) granted by DHCR in 2012, added to the rent in the last lease, the MCI order supposedly attached to petitioner's papers is actually a re-filing of the Multiple Dwelling Registration (MDR) (*see* NYSCEF Doc. 34). More to the point, however, there is no explanation on the lease offers or in any rider as to how the legal regulated rent was established, even if based on a potentially coherent calculation after the fact. The lack of a rider annexed to a renewal offer will render the offer defective (*see Haberman v Neumann*, 2003 NY Slip Op 50031[U] [App Term, 1st Dept 2003]). Moreover, the "mistaken" actions taken by petitioner and/or its predecessor prior to *Roberts* and *Gersten* do not change the fact that the subject premises was subject to rent stabilization from the inception of respondent's tenancy. Respondent was never offered an initial rent stabilized lease. Approximately 15 years after *Roberts*, petitioner then served rent stabilized renewal leases containing a legal regulated rent that did not correspond to any lease signed by respondent, nor describe how the rent was calculated, nor indicate that these were, in reality, the initial post-J-51 rent stabilized leases for the subject apartment. In these circumstances, petitioner lacks a cause of action and respondent was justified in failing to sign either of the renewal offers (*see 125 Ct. St., LLC v Nicholson*, 67 Misc 3d 28, 35-36 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2019], *affd sub nom Matter of 125 Ct. St., LLC v Nicholson*, 214 AD3d 723 [2d Dept 2023]; *Cordero*, 2022 NY Slip Op 50063[U], *1; *Gilpatrick*, 2010 NY Slip Op 50740[U], *1). Accordingly, respondent's cross-motion is granted pursuant to CPLR §§ 3211(a)(1) and (7), and the petition is dismissed. The remainder of the alternative relief sought in respondent's cross-motion is denied as moot. The

8

[* 8]

clerk shall issue a judgment dismissing the petition (*see* CPLR 411). By making this determination, the court stresses that it does not make any declaration as to the legal regulated rent for the subject premises.

Upon the granting of respondent's cross-motion, petitioner's motion is denied as moot. Respondent's counterclaims are severed without prejudice (*see* CPLR § 407; *City of New York v Candelario*, 223 AD2d 617, 618 [2d Dept 1986]). Petitioner's motion for use and occupancy pendente lite, which was brought by order to show cause and is returnable on January 12, 2026 (motion seq. 4), is also denied as moot. The January 12, 2026 court date is stricken.

This Decision/Order will be filed to NYSCEF.

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

APPROVED
CGUTHRIE , 12/31/2025, 8:18:48 AM

Dated: New York, New York
     December 31, 2025                    HON. CLINTON J. GUTHRIE
                                        J.H.C.

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| MOTION SEQ. #: 2 | | GRANTED | X DENIED | GRANTED IN PART | | OTHER |
| MOTION SEQ. #: 3 | | GRANTED | DENIED | X GRANTED IN PART | | OTHER |
| MOTION SEQ. #: 4 | | GRANTED | X DENIED | GRANTED IN PART | | OTHER |
| CHECK IF APPROPRIATE: | | SETTLE ORDER | | SUBMIT ORDER | | STAY CASE |
| | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |
| NOTES | | | | | | |

9

[* 9]