Matter of AEJ 534 E. 88th, LLC v New York State Div. of Hous. & Community Renewal (2021 NY Slip Op 02977)





Matter of AEJ 534 E. 88th, LLC v New York State Div. of Hous. & Community Renewal


2021 NY Slip Op 02977


Decided on May 11, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 11, 2021

Before: Gische, J.P., Moulton, González, Scarpulla, JJ. 


Index No. 157908/18 Appeal No. 13130 Case No. 2019-5717 

[*1]In the Matter of AEJ 534 East 88th, LLC Petitioner-Appellant,
v
New York State Division of Housing & Community Renewal, Respondent-Respondent.


Robert M. Olshever, P.C., New York (Robert M. Olshever of counsel), for appellant.
Mark F. Palomino, New York (Aida P. Reyes of counsel), for respondent.



Judgment, Supreme Court, New York County (Carol R. Edmead, J.), entered July 3, 2019, denying the petition to annul the order of respondent New York State Division of Housing and Community Renewal (DHCR), dated June 27, 2018, which granted in part both AEJ's and tenant's petitions for administrative review (PAR) of an order of the Rent Administrator, dated July 14, 2017, which determined the legal regulated rent, and affirmed the rent-stabilized status of tenant's apartment, and dismissing the proceeding brought pursuant to CPLR article 78, unanimously modified, on the law and the facts to defer the determination of the legal rent to the Housing Court Judge, and otherwise affirmed, without costs.
In this article 78 proceeding, AEJ 534 East 88th LLC appeals from Supreme Court's denial of its petition to annul a June 27, 2018 determination by respondent New York State Division of Housing and Community Renewal (DHCR) finding that apartment 4C (apartment) located at 534 East 88th Street in Manhattan (building) and occupied by nonparty Sharon Hayes is rent-stabilized. DHCR also determined the base date rent for the apartment, as the basis for calculating an overcharge, by using a self -described "bridging the gap" formula. AEJ contends that in making these determinations Supreme Court and DHCR incorrectly applied Rent Stabilization Code (RSC) [9 NYCRR] § 2526.1(a)(3)(iii) as amended in January 2014. AEJ claims that the 2005 non-regulated lease, given to the prior tenant, met the requirements of the former version of that statute then in effect. It then argues in the alternative that either the rent- stabilized rent was legitimately set and there is no overcharge, or that the apartment was legally removed from rent-stabilization pursuant to the applicable high rent vacancy decontrol provisions.
We find that Supreme Court correctly denied AEJ's petition insofar as it seeks reversal of DHCR's determination that the apartment is rent-stabilized. DHCR's examination of the apartment's rental history to determine its regulated status had a rational basis (see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal (35 NY3d 332, 375 [2020], rearg denied sub nom Raden v W7879, LLC, 35 NY3d 1079 [2020] [Regina]; Gersten v 56 7th Ave. LLC, 88 AD3d 189, 207 [1st Dept 2011]; Matter of Kostic v New York State Div. of Hous. & Community Renewal, 188 AD3d 569, 570 [1st Dept 2020]; East W. Renovating v New York State Div. of Hous. & Community Renewal, 164 AD3d 166, 167 [1st Dept 2005]). DHCR erred, however, in establishing the base date rent by using the last registered rent from 1990 and then adding subsequent rent-stabilized rent increases to bring it up to date as of March 2010. The rent history of the apartment beyond the four year look back should not have been examined to determine the base rent for overcharge purposes (see Regina, 35 NY3d at 352, n 4). Rather the base date rent is what Hayes actually paid four years prior to the date [*2]when AEJ filed its request for administrative determination (AD request) with DHCR.
Many of the relevant facts, events and circumstances are not in dispute or are unrefuted. The building was owned and operated by hospitals and their affiliates starting in 1982 and continuing for decades thereafter. In September 2004, nonparty 534 East 88th (prior owner), purchased the building. While the apartment housed hospital staff from at least September 1999 to March 19, 2004, it was temporarily exempt from rent-stabilization pursuant to RSC 2520.11(f).[FN1] The issues on appeal principally concern whether, as AEJ claims, the apartment became deregulated when the temporary exemption ended, or whether, as DHCR determined, it resumed its rent-stabilized status. In addition, if the apartment is rent-stabilized, whether DHCR properly determined the base date rent on which to calculate any overcharge.
After it ceased being used for hospital housing, the apartment remained vacant for several months until June 1, 2005 when the prior owner obtained a new tenant (Adriana Teixeira). Teixiera was offered a standard form of nonregulated apartment lease "for apartments not subject to the rent-stabilization law" (caps and bold omitted). Although the Teixeira lease was for $2,300 per month, it included a preferential lease rider requiring her to only pay a lower rent of $2,000 a month. The preferential lease rider states that: "The Legal Regulated Rent is $2,300.00. The Tenant acknowledges that the subject apartment is no longer subject to the Rent Stabilization Law & Code, and that this Lease shall in no way affect the lawful base rent for the subject apartment." According to AEJ, the apartment became deregulated in 2005, because the "first rent" charged and paid by Teixeira after the temporary exemption ended exceeded $2,000 per month, coinciding with the high rent vacancy threshold then in effect.
In March 2010, the apartment was leased to a new tenant (Hayes). Hayes was offered a one-year nonregulated lease commencing March 1st. Although the lease was for $2,300 per month, it also contained a preferential rent rider allowing Hayes to pay a lower rent of $1,600 a month through February 28, 2011; $1,800 from March 1, 2011 to February 28, 2013; $1,926 from March 1, 2013 to February 28, 2015; and $2,004 from March 1, 2015 to February 29, 2016. The preferential lease rider states that "[t]he Tenant acknowledges that the subject apartment is no longer subject to the Rent-Stabilization Law & Code and that this lease shall in no way affect the lawful base rent for the subject apartment." A second rider to the lease states that:
"THIS RIDER AND THE APARTMENT ARE NOT SUBJECT TO RENT-STABILIZATION, RENT CONTROL OR ANY OTHER RENT REGULATION."
Paragraph 31 of this rider further states:
"NO RENT-STABILIZATION COVERAGE THE APARTMENT IS NOT SUBJECT TO THE RENT-STABILIZATION LAW, RENT CONTROL OR ANY OTHER FORM OF RENT REGULATION WHICH EITHER LIMITS THE AMOUNT THE OWNER CAN CHARGE [*3]FOR RENT OR COMPELS OWNER TO RENEW THIS LEASE."
AEJ argues that the apartment was no longer subject to rent-stabilization as of 2005 because the temporary exemption ended and the rent exceeded $2,000. Alternatively, AEJ argues that if, notwithstanding the contrary language in the lease, Teixeira was a rent-stabilized tenant, the parties agreed to a legal "first rent" that complied with the requirements of former RSC 2526.1(a)(3)(iii). AEJ further argues that former RSC 2526.1(a)(d)(iii) permitted owners to charge an agreed to "first rent" as the lawful rent following more than four years of a temporary exemption and the 2014 amended version of RSC 2526.1(a)(3)(iii) (which set forth a different methodology for calculating rents after a temporary exemption) should not be applied retroactively.
In December 2015, AEJ filed its request for an administrative determination (AD request), citing RSC 2522.6 and seeking a determination by DHCR confirming the "deregulated status" of the apartment. The provision relied upon was to have the DHCR establish the legal rent for the apartment.[FN2] In February 2016, AEJ commenced a nonpayment proceeding against Hayes in the Housing Part of Civil Court.
[FN3] In her answer to each of these proceedings, Hayes asserted defenses related to illegal deregulation of the apartment and rent overcharge. Since this is the first time the issue of whether Hayes was being overcharged for rent was raised, the base date for overcharge purposes under rent-stabilization is December 23, 2011.
By order dated July 14, 2017 the rent administrator (RA), applying RSC 2526.1(a)(3)(iii), as amended in 2014, determined that the apartment was rent-stabilized and that Hayes was a rent-stabilized tenant. The RA set the base date rent at $1,800. Finding that rent registrations had not been filed between 2011 and 2017, the RA froze the rent and also determined that there had been an overcharge of $9,458.35, including treble damages. AEJ filed a petition for administrative review (PAR)[FN4]. AEJ relied on many of the same arguments that it now makes on appeal. It also challenged the RA's overcharge determination on the basis that the RA had usurped the Housing Court's authority to make that determination, and that imposition of treble damages was unwarranted.
By order dated June 27, 2018, DHCR's Deputy Commissioner granted AEJ's PAR in part. The Deputy Commissioner affirmed the RA's determination that apartment 4C was rent-stabilized, noting that even under the pre-amendment version of the statute, the "first rent" charged to Teixeira did not qualify, because she was not offered a rent-stabilized lease. The Deputy Commissioner determined, however, that the base date rent was incorrectly calculated by the RA. Using the last registered rent prior to the temporary exemption (the 1990 monthly rent of $398.15), and adding subsequent rent-stabilized increases through 2005, the Deputy Commissioner determined that the legal rent for the apartment in 2005 was $711[*4].12 a month. He then added further rent-stabilization increases to set Hayes' monthly rent finding it was $928.28, effective March 1, 2010. The Deputy Commissioner did not determine the overcharge, agreeing with AEJ that it should be decided by the court in the nonpayment proceeding. The method employed by the Deputy Commissioner, known as bridging-the-gap, corresponds to the methodology endorsed by this Court in Gordon v 305 Riverside (93 AD3d 590 [1st Dept 2012]). DHCR also describes this methodology as what is codified in the 2014 amendment of RSC 2526.1(a)(3)(iii).
AEJ commenced an article 78 proceeding, seeking to annul as arbitrary and capricious DHCR's PAR order. AEJ asserted the same arguments it raised in the AD request, that the apartment was deregulated in 2005 when Teixiera took occupancy, or that, in any event, the base rent should have been set at $2,000 beginning on June 1, 2005, based on what Teixiera was actually paying. In support of AEJ's alternative argument, that it set the rent in 2005 in compliance with former RSC 2526.1(a)(3)(iii) AEJ argues claims that the 2005 lease was actually a rent-stabilized lease, not a free market lease, because of its reference to preferential rents. AEJ argues that although the Teixiera tenancy was rent-stabilized, the increased, high-rent vacancy rent of $2,000 took it out of rent-stabilization, so that by the time Hayes moved in the apartment was no longer subject to rent regulation. AEJ contends that it was irrational for DHCR to have utilized the "bridging the gap" method set forth in the amended version of the statute to determine the legal rent because the owner in 2005 complied with the RSC as it was then written, and it could not have complied with a statute not yet in place.
In its July 3, 2019 decision, Supreme Court denied the petition and upheld DHCR's PAR order. Supreme Court found that it was neither arbitrary nor capricious and that it was within DHCR's authority to apply the 2014 amended version of 2526.1(a)(3)(iii). The court noted that after the temporary exemption ended, the first tenant (Teixeira) was not offered a rent-stabilized lease, her tenancy was rent-stabilized, and that as the amended law required, DHCR had to determine the legal rent in order to determine the overcharge. The court agreed with DHCR's application of the "bridging the gap" method to set the legal rent on the base date, and rejected AEJ's argument that given the absence of fraud, it was improper to examine the rental history beyond four years prior to the base date.
Since AEJ filed its AD request in December of 2015, prior to the enactment of the Housing Stability and Tenant Protection Act of 2019 (HSTPA), pre-HSTPA law applies. Resolution of the parties' claims is, therefore, guided by the recent Court of Appeals decision in Regina, as well as other recent decisions of this Court (Matter of Bazan v New York State Div. of Hous. & Community Renewal, 189 AD3d 495 [1st Dept 2020]; 435 Cent. Park W. Tenant [*5]Assn. v Park Front Apts., LLC, 183 AD3d 509 [1st Dept 2020]). Regardless of its age, an apartment's rent history is always subject to review to determine whether the apartment is rent-regulated (Regina, 35 NY3d at 351, n 4; Kostic, 188 AD3d at 569). Regina does not restrict examination of an apartment's rent history to four years prior to the commencement of the action or proceeding where the issue is the apartment's status.
In Regina the Court carefully distinguished between those actions that present "challenges to the deregulated status of an apartment" as opposed to those concerning over charge claims (Regina, 35 NY3d at 351, n 4). In making that distinction the Court observed that the RSL has long placed a time limitation (i.e., statute of limitations, CPLR 213-a) on the look back period that applies to overcharge claims. There is no corresponding restriction in either the former or current version of RSC 2526.1(a)(3)(iii). Indeed, there is no time restriction at all. Consequently, DHCR's determination concerning the rent-stabilized status of the subject apartment using its rent history was rationally based and supported by the record (CPLR 7803[3]; see also Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144 [2002]; Matter of Cipolla v New York State Div. of Hous. & Community Renewal, 153 AD3d 920, 922 [2d Dept 2017]). DHCR correctly considered the records relating to the building's ownership and rental history for the subject apartment to determine its regulated status (Regina, 35 NY3d 351 n 4; Gersten, 88 AD3d 189; Kostic, 188 AD3d 569; East W. Renovating, 164 AD3d 166; Thompson Assets LLC v Raffelo, 61 Misc 3d 130[A] [App Term, 1st Dept 2018]).
In its entirety, former RSC 2526.1(a)(3)(iii) used to provide as follows:
"Where a housing accommodation is vacant or temporarily
exempt pursuant to 2520.11 of this Title on the base date,
the legal regulated rent shall be the rent agreed to by the
owner and the first rent-stabilized tenant taking occupancy
after such vacancy or temporary exemption, and reserved in
a lease or rental agreement; or, in the event a lesser amount
is shown in the first registration for a year commencing after
such tenant takes occupancy, the amount shown in such registration."
RSC 2526.1(a)(3)(iii) was amended in 2014, and now provides:
"Where a housing accommodation is vacant or temporarily
exempt from regulation pursuant to 2520.11 of this Title
on the base date, the legal regulated rent shall be the prior
legal regulated rent for the housing accommodation, the
appropriate increase under section 2522.8 of this Title, and if vacated or temporarily exempt for more than one year, as further increased by successive two year guideline increases that could have otherwise been offered during the period of such vacancy or exemption and such other rental adjustments that would have been allowed under this code."
AEJ's argument that DHCR should not have applied the 2014 rent code amendments [*6]retroactively is unavailing. Regardless of which version of RSC 2526.1(a)(3)(iii) is employed, each version contemplates that when a once temporarily exempt apartment previously used for hospital housing returns to the marketplace, it resumes its rent-stabilized status, because it was the status it had before the temporary exemption. In 2005, Teixeira was not offered a rent-stabilized lease, nor was Hayes offered a rent-stabilized lease thereafter. Since a rent-stabilized apartment with a proper "first rent" was never offered to Teixeira, it was rational for DHCR to conclude that the apartment was and still is rent-stabilized. Moreover, since the apartment was never properly treated by any owner as rent-stabilized, it could not have been removed from rent-stabilization based on high-rent vacancy deregulation. AEJ's argument, that the 2005 lease qualifies as a rent-stabilized lease was properly rejected by the DHCR. The argument is defeated by the very terms of the lease and its riders. It clearly provides that it is a "Standard Form of Apartment Lease for Apartments not Subject to the Rent-stabilization Law." The lease fails to comply with any of the rigorous requirements of a rent-stabilized lease (see e.g. Gordon v 305 Riverside Corp., 93 AD3d at 592-593). Furthermore, high-rent vacancy increase of an apartment was never automatic, even before the HTSPA. An owner had to comply with the requirements of RSL 26-504.2(a), among them providing the new vacancy tenant with written notice disclosing what the last regulated rent was, the reason the apartment was no longer rent regulated, and a calculation of how the rent had reached the applicable deregulation threshold in effect. The mere incorporation of a preferential rent rider does not and use of certain jargon does not, as AEJ contends, mean the non-regulated lease was really intended to be a rent-stabilized lease. DHCR's determination that the nonregulated lease is evidence that Teixiera's tenancy was not treated as if it were rent-stabilized is neither arbitrary nor capricious. To the contrary, the determination has a rational basis in the record.
We do find, however, that DHCR's determination was affected by an error of law to the extent that it applied its own policy of "bridging the gap" to determine the base date rent of the apartment using the last filed registration statement, which was in 1990 when the legal regulated rent was $398.15. This methodology is wholly inconsistent with how a rent overcharge should be calculated, leading us to modify Supreme Court and vacate the Deputy Commissioner's determination of what the legal rent was on the base date. Although regardless of its age, an apartment's rent history is always subject to review to determine whether the apartment is rent regulated (Kostic, 188 AD3d at 569), Regina also instructs, that an overcharge claim is subject to a limited four-year lookback to determine the base rent. The absence of contemporaneous DHCR filings does not allow [*7]for a lookback beyond the four-year period to an earlier legal regulated rent reported to DHCR (see Corcoran v Narrows Bayview Co., LLC, 183 AD3d 511, 512 [1st Dept 2020]). Furthermore, in the absence of fraud, "for overcharge calculation purposes, the base date rent [is] the rent actually charged on the base date (four years prior to initiation of the claim) and overcharges [are] to be calculated by adding the rent increases legally available to the owner under the RSL during the four-year recovery period." (Regina at 355-356).
In Regina, the Court rejected the "reconstruction method" applied by this Court in Taylor v 72A Realty Assoc., L.P. (151 AD3d 95 [1st Dept 2017]). In fact, in Regina the Court rejected the alternative methods proposed by each of the tenants in the underlying actions, observing that they were are available only "[w]here the rent charged on the base date cannot be established (RSC 2526.1[a][3][ii])" (Regina, 35 NY3d at 359). The reconstruction method applied in Taylor entailed identification of the last legal regulated rent before apartment was improperly deregulated and then adding on permissible rent increases between the date of that regulated rent and the base date (Taylor, 151 AD3d at 105-106). The bridging the gap method as described and applied by DHCR is similar to the reconstruction method rejected in Regina. Like the reconstruction method, DHCR's methodology impermissibly considers the apartment's rental history outside the four-year limitations and lookback period, not for the purposes of determining its regulated status, but for calculating the rent overcharge. A closer look at RSC 2526.1 entitled "Determination of legal regulated rents; penalties; fines; assessment of costs; attorney's fees; rent credits" is instructive in determining exactly what is required by RSC 2526.1(a)(3)(iii), as amended, and its purpose. RSC 2526.1(a)(2) provides that "[a] complaint pursuant to this section must be filed with the DHCR within four years of the first overcharge alleged, and no determination of an overcharge and no award or calculation of an award of the amount of an overcharge may be based upon an overcharge having occurred more than four years before the complaint is filed". RSC 2526.1(a)(3)(i) goes on to provide that "[t]he legal regulated rent for purposes of determining an overcharge shall be deemed to be the rent charged on the base date, plus in each case any subsequent lawful increases and adjustments" Where, as here, the apartment was vacant or temporarily exempt for more than one year, RSC 2526.1(a)(3)(iii) specifies that "the legal regulated rent shall be the prior legal regulated rent" with adjustments for guidelines increase, etc.
Applying the law to the facts of this case, the "base date," is "[t]he date four years prior to the date of the filing [with DHCR] of such [rent overcharge] appeal or complaint" (RSC 2520.6[f][1]), here December 23, 2011. DHCR misapplied the law by considering the rental history [*8]of the apartment prior to that base date and determining that the base date rent is $398.15, the amount was charged more than two decades before the overcharge issue arose. Consequently, the legal regulated rent on the base date, for purposes of calculating the overcharge is $1,800, which is the preferential rent that Hayes was paying on December 23, 2011, plus any allowable increases. Although the rent-regulated status of the apartment was subject to challenge and the rental history of the apartment could be examined for that purpose, the 2005 Teixiera rent can no longer be examined or challenged.
The Deputy Commissioner's observation that "some methodology is required to be used" to set the rent, rather than "simply validating a deregulated rent and calling it regulated," is a result carefully considered by the Court in Regina. The Court noted that although particular conduct is illegal, this "does not mean that tenants must be able to recover a certain measure of monetary damages for associated rent increases despite their failure to seek recovery within the limitations and lookback periods" (Regina at 360). Applying that principle here, Hayes was not the tenant in 2005 and her tenancy did not commence until 2010. She could not have filed an overcharge complaint because she was not a tenant at that time, but she also did not take any action with respect to the rent until AEJ filed its AD request with DHCR in December 2015. Although the parties disagree over whether this is a status case or an overcharge claim, in actuality it is both.
Hayes has prevailed in obtaining valuable protections under the rent-stabilization laws because her status has been confirmed, her damages are whatever is allowed during the statutory look back period. The Court in Regina recognized that some overcharges calculated using the lookback rule might be de minimus (Regina at 362), or even nonexistent (id.), but an exception predicated on the fact that the base date rent was higher than what the landlord could have charged under the RSL "would swallow the four-year lookback rule" because by definition the rent in every overcharge case is "illegally inflated —otherwise there would be no overcharge" (Regina at 359).
With respect to the calculation of overcharge, we agree that the Deputy Commissioner correctly determined that this calculation lies with Housing Court. This is
consistent with that court's (Maria Milin, JHC), September 20, 2016 order indicating that it would not stay the nonpayment proceeding and would decide that matter.
We have considered the remaining arguments and find them unavailing. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT. 
Head align="center">ENTERED: May 11, 2021



Footnotes

Footnote 1: RSC 2520.11(f ) applies to "(f) housing accommodations owned, operated, or leased or rented pursuant to governmental funding, by a hospital" and exempts an apartment "occupied by a tenant whose initial occupancy is contingent upon an affiliation with such institution . . . " However, once the apartment becomes "occupied by a nonaffiliated tenant [it] shall be subject to the RSL and this Code . . ."

Footnote 2: RSC 2522.6 concerns "Orders where the legal regulated rent or other facts are in dispute, in doubt, or not known, or where the legal regulated rent must be fixed."

Footnote 3: AEJ 534 East 88th LLC v Hayes, L&T index No.050263/2016 (Civ Ct, NY County).

Footnote 4: Hayes also filed a PAR, but the issues she raises are not part of this appeal.