Casey v Whitehouse Estates, Inc. (2021 NY Slip Op 04646)





Casey v Whitehouse Estates, Inc.


2021 NY Slip Op 04646


Decided on August 05, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 05, 2021

Before: Manzanet-Daniels, J.P., Gische, Webber, Kennedy, JJ.


Index No. 111723/11, 595472/17 Appeal No. 13969, M-1379 Case No. 2020-03001 

[*1]Kathryn Casey et al., Plaintiffs-Respondents, Pamela Renna et al., Plaintiffs-Intervenors,
v
Whitehouse Estates, Inc., et al., Defendants-Appellants.

Whitehouse Estates, Inc., et al., Third-Party Plaintiffs-Appellants,
v
Roberta L. Koeppel et al., Third-Party Defendants.


Rosenberg & Estis, P.C., New York (Howard W. Kingsley of counsel), for appellants.
Himmelstein, McConnell, Gribben, Donohue & Joseph LLP, New York (Ronald S. Languedoc of counsel), for respondents.



Order, Supreme Court, New York County (Gerald Lebovits, J.), entered March 28, 2017, which, insofar as appealed from as limited by the briefs, granted plaintiffs' motion for summary judgment declaring that their legal regulated rent should be calculated according to the Rent Stabilization Code's default formula and denied defendants' cross motion to determine the amount of use and occupancy, affirmed, with costs.
From 1991 through 2014 (the J-51 period), defendants' building located at 350 East 52nd Street, New York, New York, received certain tax benefits from New York City's J-51 Tax Abatement and Exemption Program under Administrative Code of City of NY § 11—243, authorized by Real Property Tax Law § 489. During the J-51 period, defendants deregulated 78 rent-stabilized apartments under the now-repealed high-rent vacancy deregulation provisions of Rent Stabilization Law (RSL [Administrative Code of City of NY]) § 26-504.2.
In 2009, the Court of Appeals decided Roberts v Tishman Speyer Props., L.P. (13 NY3d 270 [2009]), which held that rent-regulated apartments could not be removed from rent stabilization while the building received J-51 benefits (id. at 280). Later, in Gersten v 56 7th Ave. LLC (88 AD3d 189 [1st Dept 2011], appeal withdrawn 18 NY3d 954 [2012]), decided on August 18, 2011, this Court determined that Roberts applied retroactively.
By letter dated September 28, 2011, the president of defendant Whitehouse, informed the tenants whose apartments were deregulated that the rent registrations for their apartments would be amended and any overcharges reimbursed. By letter dated October 20, 2011, defendants' consultant Stephen K. Trynosky wrote to the tenants in the building, enclosing their Division of Housing and Community Renewal (DHCR) "rent filings for the past several years" and stating that although a rent recalculation was required, "this usually does not affect the actual collectable rent paid" and that if the actual rent was lower than defendants' calculation, it was considered a "preferential rent."
In October 2011, plaintiffs commenced this class action for a declaration that their apartments were subject to rent stabilization, and for related injunctive relief, rent overcharges, and attorneys' fees. Defendants' affirmative defenses asserted compliance with the law at the time, good faith, and compliance with DHCR's guidelines during the relevant period. By March 2012, following the commencement of this action, defendants had purported to recalculate the legal regulated rent for the apartments and filed rent registrations with DHCR reflecting defendants' rent calculations for approximately 72 apartments for the years 2007 through 2011.
By notice dated December 8, 2015, plaintiffs moved for summary judgment to the extent of granting a declaratory judgment regarding the rent-stabilized status of plaintiffs' tenancies; calculating their legal regulated rents under the default formula; freezing their rents based on defendants' [*2]failure to properly register their apartments; and calculating the amount of refund due to each plaintiff. Plaintiffs argued that some review outside the four-year lookback period was available for establishing the base date under Rent Stabilization Code (RSC) (9 NYCRR) § 2526.1(a)(2)(ix), and that defendants otherwise had failed to establish a reliable base date rent for the apartments, warranting application of the default formula and the freezing of their rents.
The court granted the motion for summary judgment. The court determined that under tests set forth in Thornton v Baron (5 NY3d 175 [2005]) and Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358 [2010]), plaintiffs had made a colorable claim of fraud because defendants' 2012 retroactive registration of the improperly deregulated apartments was an attempt to avoid the court's adjudication of the issues and to impose their own rent calculations rather than face a determination of the legal regulated rent within the lookback period.
It further reasoned that because this conduct fulfilled the Grimm test and defendants' calculations were unreliable, the default formula applied and as such, it directed a special referee to hear and report on the proper calculations for the 78 apartments applying that formula.
Defendants' primary argument on appeal is that the motion court erred in determining that the default formula applied, and instead the court should have used defendants' calculations of what the base date rent was in October 2007, because those calculations were made in good faith. Defendants note that the motion court's determination relied heavily on 72A Realty Assoc. v Lucas (101 AD3d 401 [1st Dept 2012]), which has been overturned by the Court of Appeals and deemed a "deviation," as recourse to the default formula was inappropriate there because "the court did not find a colorable claim of fraud" (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 357 [2020]).
Although defendants are correct that the Court of Appeals' decision in Regina held that Lucas erred in applying the default formula, the facts of this case differ significantly from those in Lucas and other typical post-Roberts cases.
Specifically, in Regina, the Court of Appeals rejected recourse to the default formula in cases like Lucas, in which the holding was based on the landlord's failure to maintain repair records from 2001, around seven years before the original holdover proceeding in which deregulation of the apartment was challenged, and more than a decade before this Court's decision (Lucas, 101 AD3d at 402). Here, however, after commencement of the action, defendants, without court approval, unilaterally registered rents from the base date forward that were not the rents actually paid, and instead registered rents far higher, without explanation. While these intentional misstatements of fact, which were intended [*3]to artificially increase the legal regulated rent, constitute fraud under Grimm, RSC 2522.6(b)(2) also calls for application of the default formula where "(i) the rent charged on the base date cannot be determined; or (ii) a full rental history from the base date is not provided." Both of those scenarios apply here, and differ from situations in which the base date rent is known (Regina,35 NY3d at 359 ["the alternative methods proposed by the tenants . . . reflected in the regulations . . . are available only '[w]here the rent charged on the base date cannot be established'"]). Here, the base date rent cannot be established because defendants failed to provide leases showing what the actual rent charged on the base date was, or whether the actual rent was known; rather, without explanation, they registered rents much higher than the actual rent. In such cases, under RSC 2522.6(b)(2), the default formula applies.
We find that the motion court correctly determined that plaintiffs' legal regulated rent should be calculated according to the default formula set forth in RSC (9 NYCRR) § 2522.6(b). Although defendants may have been following the law in deregulating apartments during the period before Roberts was decided (see Regina, 35 NY3d at 356), their 2012 retroactive registration of the improperly deregulated apartments was an attempt to avoid the court's adjudication of the issues and to impose their own rent calculations rather than face a determination of the legal regulated rent within the lookback period.
Moreover, in Montera v KMR Amsterdam LLC (193 AD3d 102, 107 [1st Dept 2021]), this Court noted that "Regina does not grant an owner carte blanche in post-Roberts/Gersten cases to willfully disregard the law by failing to re-register illegally deregulated apartments, enjoying tax benefits while continuing to misrepresent the regulatory status of the apartments, and taking steps to comply with the law only after its scheme is uncovered."
Although defendants maintain that they provided evidence showing the legal regulated rent on the base date on which the motion court should have relied, the DHCR rent history for the apartments within the four-year lookback period shows that the rents beginning in 2007, four years before the complaint was filed, were registered in 2012, based on defendants' unilateral calculations and not the actual rent charged. Plaintiffs also assert that the Trynosky letter demonstrates that in some cases, defendants converted plaintiffs' actual rents to "preferential rents" in order to justify registering significantly higher rents with DHCR. That evidence, combined with defendants' failure to produce leases for the class within the lookback period, showing the actual rent paid, does not adequately establish the base date rent by a preponderance of the evidence under RSC 2526.1(3)(i).
As properly found by the motion court, this conduct fulfilled the Court of Appeals test in Grimm that:
"What is required is evidence [*4]of a landlord's fraudulent deregulation scheme to remove an apartment from the protections of rent stabilization [in which case] the rental history may be examined for the limited purpose of determining whether a fraudulent scheme to destabilize the apartment tainted the reliability of the rent on the base date" (15 NY3d at 367).
The motion court's consideration here of defendants' conduct within the lookback period and following the commencement of the action differs appreciably from the more attenuated situation in Lucas, which involved the failure to produce contractor bills, a contract for work in the apartment, or records of payments for the renovations that would justify the higher rent (Regina, 35 NY3d at 356 n 7 ["Fraud consists of 'evidence [of] a representation of material fact, falsity, scienter, reliance and injury'"]).
Contrary to the assertions by our dissenting colleague, defendants' actions were more than simply imperfect registrations, and as a whole the evidence was sufficient to satisfy plaintiffs' burden on summary judgment. Defendants failed to produce leases for the class reflecting the actual rent charged on the base date, October 14, 2007 (RSC 2520.6[f]), seeking instead to rely on their retroactive rent registration for the relevant apartments in 2012, after this action was commenced, based on their own unilateral calculations of what the base date rent ought to have been.
Further, our dissenting colleague's argument that our conclusion that defendants' actions evidenced fraud is inconsistent with Montera, Regina, as well as Matter of AEJ 534 E. 88th, LLC v New York State Div. of Hous. & Community Renewal (194 AD3d 464 [1st Dept 2021]) and ignores the fact that in those cases, the defendant landlord failed to file the rent registrations. Here, the retroactive rent registrations that were filed by defendantsreflected rents significantly higher than those actually charged, and some purported to classify the actual rent as a "preferential rent" to justify registration of the higher amount. Further, there was no basis submitted for their calculation. Defendants' actions gave rise to a colorable claim of fraud (Grimm, 15 NY3 at 367; see also Conason v Megan Holding LLC, 25 NY3d 1, 16 [2015]).
Based on defendants' conduct, and in light of the absence of evidence in the record as to the actual rent charged on the base date by which to calculate legal regulated rents under RSC 2526.1(a)(3)(i), plaintiffs' overcharges, if any, must be determined according to the default formula set forth in RSC 2522.6(b) (435 Cent. Park W. Tenant Assn. v Park Front Apts., LLC, 183 AD3d 509, 510-511 [1st Dept 2020]).
In view of the foregoing, defendants' fourteenth, fifteenth, and seventeenth defenses affirmative defenses, asserting their good faith and compliance with the Division of Housing and Community Renewal's interpretation of the law during the relevant period, were correctly dismissed. Contrary to defendants' contentions, the [*5]court's statement in the class certification order to the effect that Roberts-type overcharge cases do not involve willfulness does not insulate from consideration defendants' intentional conduct after commencement of the action (id.). Moreover, because plaintiffs waived treble damages under CPLR 901(b), the issue of willfulness will not affect the calculation of damages.
The motion court properly determined that use and occupancy to be paid for each plaintiff's apartment should be calculated pursuant to a prior use and occupancy order and the amount of use and occupancy actually paid, if any, to date. The court also properly directed that any plaintiffs in default post a bond in the amount of the special referee's calculation and that, upon failure to do so, defendants could seek their ejectment. It is unclear how defendants are aggrieved by these rulings. In any event, a superseding use and occupancy order has been entered and will govern the parties until the special referee sets the amounts as directed in the reference.
We have considered defendants' remaining contentions and find them unavailing. M-1379 - Casey v Whitehouse Estates Inc.
Motion for a stay denied without prejudice to the parties' respective positions at the hearing before the referee concerning the calculation of plaintiffs' legal regulated rent under the default formula (Levinson v 390 W. End Assoc., L.L.C., 22 AD3d 397 [1st Dept 2005]).
All concur except Gische J. who dissents in a memorandum as follows:
GISCHE J., dissenting
As in Montera v KMR Amsterdam LLC (193 AD3d 102 [1st Dept 2021,Gische J., dissenting in part]), I disagree that defendants engaged in fraud just because they deregulated these apartments while receiving J-51 benefits. Where, as here, defendants, in reliance on DHCR's own interpretation of the law, improperly deregulated some apartments while receiving such benefits, there is no legal basis to calculate the base rent or current legal rent using the default formula, or to reconstruct the rent history of each apartment (Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal, 35 NY3d 332, 356 [2020] [Regina]). I would reverse the order of Supreme Court and remand for completion of all pretrial proceedings so the base date rents and rent overcharges, if any, can be determined in accordance with Regina.
This is a Roberts v Tishman Speyer Prop., LP (13 NY3d 270 [2009]) type J-51 rent overcharge case, certified as a class action (Order, August 6, 2012, Singh J., 36 Misc 3d 1225[A], 2012 NY Slip Op 51471 [U] [Sup Ct, NY County 2012][2012 certification order]). Defendants are current and prior owners of the building located at 350 East 52nd Street, New York, New York, and their managing agents.[FN1] The building was enrolled in and received J-51 tax abatement benefits from 1991 through and including 2014. Between 1993 and 2011, at least 60, but as many as 83 apartments were deregulated when they became vacant [*6]and their rent exceeded the high rent/high income threshold. The class-member plaintiffs' individual tenancies commenced between 2002 and 2011. In September 2011, shortly after Gersten v 56 7th Ave., LLC (88 AD3d 189 [2012], appeal withdrawn 18 NY3d 954 [2012]) ruled that Roberts applied retroactively, defendants notified all the affected tenants that on account of Roberts "many units that were switched to market rates [would] now be converted back to stabilization rates," new rent-stabilized leases would be issued, and any overpayments would be reimbursed. The owner also stated that if the new regulated rent was higher than what the tenant was currently paying, the tenant would be allowed to continue paying the lower rent as a preferential rent. Defendants hired a consultant to prepare rent calculations for them, and using those calculations filed registration statements with DHCR for the years 2007 — 2011, the years those apartments had been registered as exempt from rent regulation. Those registrations occurred in October 2011, just a few days after this action was commenced on October 14, 2011 by the filing of the complaint.
Plaintiffs claim that defendants engaged in fraud, first by illegally deregulating the subject apartments while receiving J-51 tax abatements, and again when defendants filed the amended rent registrations with DHCR. Plaintiffs further contend that the registered rents are "grossly" inflated and that the correct legal rents must be calculated in this action using DHCR's default formula. Supreme Court (2017 WL 1161744 [Sup Ct, NY County, Lebovitz J., 3/23/17]), granted plaintiffs' motion for partial summary judgment on their first cause of action for a declaratory judgment declaring the apartments are either rent-stabilized or rent-controlled, ordering defendants to offer plaintiffs rent-stabilized leases (or to continue rent-control tenancies as required by law). Citing Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358 [2010]), Supreme Court (at *12-14) decided that defendants had not provided sufficient discovery to determine what the legal base date rent for any of the apartments should be and, therefore, the legal rents (and overcharges, if any) would be determined according to DHCR's default formula.[FN2]
Defendants do not appeal from that part of the motion court's order declaring that plaintiffs' apartments are subject to rent stabilization, or that they are entitled to rent-stabilized renewal leases. Defendants acknowledge that plaintiffs' tenancies are rent-regulated and have already offered them standard rent-stabilized renewal leases. Defendants deny, however, that they engaged in any kind of fraud, either when they began treating the apartments as deregulated, or when they tried to bring themselves into compliance with Roberts. They deny withholding any discovery and maintain there is enough information, whether provided by them or plaintiffs, to establish the base [*7]date rents and what the current legal regulated rents should be. Defendants maintain that the four-year look back period set forth in former CPLR 213-a applies and that there is no reason to use the default formula or to reconstruct the rent history of these apartments.[FN3]
I disagree that plaintiffs met their burden on summary judgment. They failed to present any evidence of defendants' fraud. The hallmarks of fraud are "a representation of material fact, falsity, scienter, reliance and injury" (Regina at 356, n 7). These hallmarks are commonly present in Thornton and its progeny, encompassing Thornton v Baron (5 NY3d 175 [2005]), Matter of Grimm v State Div. of Hous. & Community Renewal Off. of Rent Admin. (15 NY3d 358 [2010]), and Conason v Megan Holding, LLC 25 NY3d 1 [2015]). Thornton cases do not typically arise from J-51 deregulation and as Regina instructs, "a finding of willfulness is generally not applicable to cases arising from the aftermath of Roberts" because owners followed DHCR's guidance (Regina at 356, quoting Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382, 398 [2014]). Although conduct in Roberts cases may have been illegal in the sense that it violated the rent stabilization laws, it was not willful. Since fraudulent conduct must also be willful, "it follows that the fraud exception to the lookback rule is generally inapplicable to Roberts overcharge claims" (Regina at 356). Plaintiffs' fraud claim rests almost entirely on uncontroverted evidence that the defendants began treating numerous apartments as deregulated sometime between 1993 and 2011 while receiving tax benefits. This is precisely what Regina instructs is not evidence of willfulness to establish common-law fraud. Regina clearly provides that in the absence of fraud, neither the DHCR formula nor the reconstruction method may be applied. To do so "violate[s] the pre-HSTPA law by requiring review of rental history outside the four-year limitations and lookback period" and "no award or calculation of an award of the amount of an overcharge may be based on an overcharge having occurred more than four years before (former RSL § 26—516[a][2]; see former CPLR 213—a)" (Regina at 358).
The majority's view, that defendants' 2012 retroactive registration of the improperly deregulated apartments was both an attempt to avoid the court's adjudication of the issues and further evidence of fraud is unreconcilable with either the majority or dissent in Montera. In Montera, the majority found that "Regina does not grant an owner carte blanche in post-Roberts/Gersten cases to willfully disregard the law, by failing to re-register illegally deregulated apartments" (Montera v KMR Amsterdam LLC, 193 AD3d at 107). Here, defendants filed amended registrations for the years they treated the apartments as exempt from rent registration requirements. Defendants' filing of the amended registrations evinces an effort to comply with the law once Gersten made it clear that Roberts had retroactive [*8]effect. The majority's affirmance of Supreme Court's determination that these "back-dated" registrations are evidence of fraud is difficult to reconcile with Regina, Montera, and our unanimous decision in Matter of AEJ 534 E. 88th, LLC v New York State Div. of Hous. & Community Renewal (194 AD3d 464 [1st Dept May 11, 2021][AEJ]). In AEJ we stated that "[t]he absence of contemporaneous DHCR filings does not allow for a lookback beyond the four-year period to an earlier legal regulated rent reported to DHCR (see Corcoran v Narrows Bayview Co., LLC, 183 AD3d 511, 512 [1st Dept 2020])" (AEJ at 472).
Even if the rents that defendants registered are imperfect, such imperfections were anticipated and carefully considered by the Court of Appeals when it decided Regina:
"an exception predicated on the fact that the base date rent was higher than what would have been permitted under the RSL for a stabilized apartment would swallow the four-year lookback rule. In every overcharge case, the rent charged was, by definition, illegally inflated — otherwise there would be no overcharge. Prior to the HSTPA, nothing in the rent stabilization scheme suggested that where an unrecoverable overcharge occurred before the base date, thus resulting in a higher base date rent, the four-year lookback rule operated differently. To the contrary, the limitations provisions — in order to promote repose — precluded consideration of overcharges prior to the recovery period (former RSL § 26—516[a][2]; former CPLR 213—a), and it is clear from Boyd that use of a potentially inflated base date rent, flowing from an overcharge predating the limitations and lookback period, was proper in the absence of fraud. Likewise, no exception is justified by the fact that the inflated base date rent in Roberts cases resulted from improper deregulation, as opposed to an improperly high increase to a stabilized rent. The RSL makes no such distinction, and there is no indication that, under the pre-HSTPA law, an overcharge resulting from improper (but non-fraudulent) luxury deregulation warranted anything but the application of the standard lookback provisions"
 Regina at 359-360.
Although this means that sometimes a decision on the issue of damages favors the tenant and other times the landlord, regardless of who it favors financially, the tenant obtains the protections of the rent regulation laws; there is no need to "create or increase the amount of overcharge damages in order to give proper effect to Roberts" (Regina at 360). Regina dictates that in a case of a good-faith deregulation in a J-51 context, a market rent charged on the base date may be used to calculate the legal regulated rent (id. at 357). Furthermore, where the landlord registers a rent that is higher than what the tenant actually paid on the base rent, the preferential rent would now be the legal rent. A landlord may not legally charge a higher legal rent without placing language to that effect in the tenant's original lease[*9]. Consequently, the majority's perceived injustice in defendants' registration of an incorrectly high rent is redressed by the requirement that the base rent is what the tenant was actually paying. It is completely unclear in this record that the Regina-mandated rent calculation is not possible for all of the apartments in the class, so that application of a building-wide default formula is necessary.
Since plaintiffs have not proved that defendants committed fraud, whether in 2009, or with respect to the latter reregistration, Supreme Court erred in applying DHCR's default formula or ordering reconstruction of each apartment's rent history. The rent history reconstruction method was expressly rejected in Regina. The correct way to determine the tenant's legal regulated rent and any overcharge is by using "the rent actually charged on the base date (four years prior to initiation of the claim)," as former CPLR 213-a provided, here October 14, 2007, and then "adding the rent increases legally available to the owner under the RSL during the four-year recovery period" (Regina at 355-356; AEJ, 194 AD3d at 472).
Given Supreme Court's sweeping determination that the entire rent history of the deregulated apartments had to be reconstructed going back to when they were deregulated, possibly in the mid-1990's. I believe that Supreme Court's order directing calculation of rent overcharges is incorrect and should be reversed. It is unclear whether the records made available by either party provide enough information to determine the base date rent in accordance with Regina for any of the subject apartments. Given those circumstances, I would remand this matter to Supreme Court so that any remaining discovery and other pretrial matters can be completed.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 5, 2021



Footnotes

Footnote 1: Plaintiffs are no longer opposed to dismissal of claims against the managing agents because they are disclosed agents of disclosed principals.

Footnote 2: In actuality, the procedure Supreme Court described is not the DHCR default formula, which sets the base date rent as "the lowest rent charged for a rent-stabilized apartment with the same number of rooms in the same building on the relevant base date" (Regina at 354-555), but rather the rent reconstruction method, which entails determination of "overcharges based on a reconstruction of the rent [the tenant] should have been charged had the apartment never been deregulated" (Regina at 356).

Footnote 3: There is no dispute that former CPLR 213 applies because plaintiff's action was commenced and pending prior the June 2019 effective date of the Housing Stability and Tenant Protection Act (L 2019, ch 36) (HSTPA), which brought sweeping changes to the rent regulation laws. Furthermore, although the order appealed from was decided before Regina, both sides address it at length in their respective briefs.