## Matter of Cheng v State of N.Y. Div. of Hous. & Community Renewal

2024 NY Slip Op 34469(U)

December 23, 2024

Supreme Court, New York County

Docket Number: Index No. 155861/2023

Judge: John J. Kelley

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. JOHN J. KELLEY**        PART        56M

*Justice*

-------------------------------------------------------------------------------X

In the Matter of

STEPHEN CHENG,

                  Petitioner/Cross Respondent,

               v

STATE OF NEW YORK DIVISION OF HOUSING AND
COMMUNITY RENEWAL,

                  Respondent

               and

30 WEST 88 REALTY, LLC, and SM 30W88, LLC,

                  Respondents/Cross Petitioners

-------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155861/2023 |
| MOTION DATE | 10/15/2024 |
| MOTION SEQ. NO. | 002 |

**DECISION, ORDER, AND JUDGMENT**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 21, 23, 24, 25, 26, 27, 28, 29, 42, 47, 51, 52, 53, 54, 55, 56, 58 and NYSCEF document number 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 filed under MOT SEQ 001 in the proceeding designated as Index No. 156848/2023

were read on this motion to/for      ARTICLE 78 (BODY OR OFFICER)/X-PETITION
                              ARTICLE 78 (BODY OR OFFICER)      .

In this proceeding pursuant to CPLR article 78, the petitioner/cross respondent (hereinafter the tenant) seeks judicial review of so much of a May 11, 2023 determination of the respondent State of New York Division of Housing and Community Renewal (NYS DHCR) Deputy Commissioner Woody Pascal, as, upon remittal and reconsideration, denied so much his petition for administrative review (hereinafter PAR) of a May 28, 2021 decision of the NYS DHCR Rent Administrator (hereinafter RA), as sought to recover rent overcharges. The NYS DHCR answers the petition and files the administrative record. The respondents/cross petitioners, 30 West 88 Realty, LLC, and SM 30W88, LLC (hereinafter the landlords), oppose the petition, and also counterclaim for judicial review of so much of the May 11, 2023

**155861/2023 IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No. 002**

Page 1 of 17

1 of 17

determination as concluded, upon remittal and reconsideration, that the apartment that is the subject of this proceeding was and is rent-stabilized. In a cross petition, which previously had been filed as a separate petition in a related proceeding entitled *Matter of 30 West 88 Realty, LLC, et ano. v New York State Div. of Hous. & Community Renewal*, under Index No. 156848/2023, and now has been fully consolidated into the instant proceeding, the landlords also seek judicial review of so much of the same May 11, 2023 determination as, upon reconsideration of Pascal's November 21, 2021 determination, found that the apartment was rent-stabilized. The NYS DHCR and the tenant answer the cross petition. The tenant's petition is denied, the landlords' cross petition is denied, and the consolidated proceeding is dismissed.

On October 16, 1974, J & B Realty Co. (J&B) acquired an apartment building located at 30 West 88th Street, New York, New York (hereinafter the building or the apartment building). On April 25, 1994, J&B transferred the building to Zevson Realty Co., L.P. (Zevson). The tenant initially entered into a lease for the subject apartment with Zevson, effective October 1, 2009. On June 15, 2015, Zevson transferred the apartment building to 30 West 88 Realty, LLC. On July 10, 2015, 30 West 88 Realty, LLC, entered into a tenancy-in-common agreement with SM 30W88, LLC, pursuant to which SM 30W88, LLC, became the owner of a 50.01% undivided tenancy-in-common interest in the apartment building, with 30 West 88 Realty, LLC, retaining a 49.99% tenancy-in-common interest in the building.

On March 30, 2018, and, thus, after 30 West 88 Realty, LLC, had become the fee owner of the building. the tenant filed an administrative complaint with the NYS DHCR. In his complaint, the tenant alleged that,

> "[t]he owner unlawfully deregulated my apartment. I suspect that the owner is committing fraud. The owner has not registered my apartment since 2004, and I believe that I should be a rent stabilized tenant paying legal rent. The owner has also refused to provide me with a renewal lease or rider since 2010 and created a fraudulent lease renewal where my signature is forged from 10/01/13-09/30/15."

**155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No.  002**

**Page 2 of 17**

2 of 17

The tenant further alleged that his monthly rent was set at $1,900.00 for each and every month from October, 2009 until February 1, 2018, and that he had been paying that amount over that period of time, but that he was being overcharged, and, thus, was entitled both to recover the overcharge and to be provided with a renewal lease at a lower rate of rent. In support of his administrative complaint, he alleged that, based on prior apartment registrations that the J&B and Zevson had filed with the NYS DHCR between 1984 and 1998, those prior owners of the building had charged monthly rent to previous tenants in the sum of only $423.83 in 1984, increasing to only $690.73 in 1998, that his apartment had been improperly registered as exempt from registration between 1999 and 2003 because it allegedly was owner occupied, even though it was not, and that NYS DHCR records indicated that, between 2004 and 2016, a registration "was not found for subject premises." As an exhibit to his petition, however, he annexed the most recent NYS DHCR annual registration printout, which indicated that, between 2005 and 2007, a person named Erin Bulkley occupied the apartment, and was subject to registered monthly rent in the sums of $1,900.00, $1,919.00, and $1,957.00, respectively, for each of those three years, with the 2005 rent based on a vacancy increase, and the 2006 and 2007 rents based on standard, permissible rent-regulated lease renewal rates. According to these NYS DHCR records, in 2008, the apartment became exempt from rent regulation and registration because it reached the high-rent vacancy threshold of $2,000.00 per month that was in effect at that time, and the apartment was reported as exempt from regulation for each and every year from 2008 through 2017.

In their answer to the administrative complaint, the landlords alleged that, while the tenant claimed that the subject apartment was unlawfully deregulated after a period of temporary exemption, at the time of the temporary exemption,

> "the law provided that a first rent could be set after a period of temporary exemption of four or more years. The apartment was temporarily exempt due to owner occupancy. The prior owner occupied the apartment for more than four

155861/2023 IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION
Motion No. 002

Page 3 of 17

3 of 17

> (4) years as is noted in the timely registrations of this apartment for 1999, 2000, 2001, 2002 and 2003.

*****

> "Prior to the enactment of the 2014 Amendments to the Rent Stabilization Code (RSC), if an apartment was vacant or temporarily exempt for four years or more, the owner was entitled to charge a 'first rent,' which was not subject to challenge. In the subject apartment, the period of temporary exemption and subsequent first rent occurred years prior to the enactment of the 2014 Amendments to the RSC."

The landlords expressly denied the tenant's contention that his signature had been forged on the 2013 lease, and asserted that this signature was identical to those inscribed on the leases that the tenant had executed between 2009 and 2012. They further asserted that the apartment had been occupied by Bulkley from August 1, 2004 through July 31, 2007, but only after the four-year period of owner occupancy had terminated, that the initial rent of $1,900.00 was based on the fact that the unit had been owner occupied for that period of time, and that they intended to apply the permitted 3.5% and 2.75% annual increases to her rent over the second and third years of her tenancy, but were limited under the circumstances because "there was no preferential rent agreement so the legal rent was limited to the lower amount charged," that is, $1,900.00 per month over 2005/2006 and $1,959.00 per month over 2006/2007. In addition, the landlords noted that, in mid-2007, after the applicable rent could be raised to more than $2,000.00 per month due the fact that Bulkley vacated the apartment, they leased the apartment to Aaron Feigenbaum at $2,450.00 per month and that, consequently, the subject apartment was exempt from rent regulation and further registration obligations.

In a decision dated May 28, 2021, the RA recited that,

> "[o]n March 30, 2018, the tenant filed a rent overcharge complaint stating that the owner unlawfully deregulated the apartment, [he] hasn't received a lease and that the apartment registrations have not been filed. The tenant also filed a lease violation complaint under Docket No. GO410104RV, alleging the same issues, which has been consolidated into this proceeding. The issues raised are being addressed herein."

**155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No.  002**

Page 4 of 17

[* 4]

4 of 17

The RA noted that the base date of an overcharge proceeding commenced in 2018 was the date four years prior to the filing date of the complaint and that, hence, the base date for the instant dispute was March 30, 2014. He concluded that, "[p]ursuant to Section 2520.11(r)(4) of the Rent Stabilization Code, housing accommodation[s] which became or become vacant on or after June 19, 1997 but before June 24, 2011, with a legal regulated rent of $2,000.00 or more per month are exempt from the Rent Stabilization Law and Code." He ruled that, "under Rent Stabilization Code Section 2520.11(r)(6), the high rent vacancy exemption applies to the subject apartment even though the tenant was charged less (a preferential rent) than the applicable amount qualifying the deregulation." In addition, the RA noted that the Court of Appeals' decision in *Altman v 285 W. Fourth LLC* (31 NY3d 178 [2018]) confirmed the landlords' right to deregulate the subject apartment when the rent level achieved $2,000.00 or more upon the 2007 vacancy, inclusive of the vacancy increase, and that the 2019 Housing Stability and Tenant Protection Act of 2019 (L 2019, ch 36; hereinafter HSTPA) expressly provided that any unit that had been lawfully deregulated prior to June 14, 2019 would remain deregulated. The RA thus concluded that,

> "[b]ased on the above, the subject apartment was legally and permanently exempt from the rent stabilization law and code when the tenant began occupancy due to high rent vacancy deregulation. Accordingly. the subject apartment is no longer under the jurisdiction of this agency,"

and thus denied the tenant's administrative complaint.

On June 23, 2021, the tenant filed a PAR. In that PAR, the tenant alleged that, contrary to the landlords' contentions, the apartment was not owner occupied from 1999 until 2004, inasmuch as one Clara Kleinhaut lived in the apartment only until 2001, as corroborated by her voter registration documents, phonebook records, and LinkedIn profile. He averred that, although Kleinhaut was the sister-in-law of Michael Schreiber, a partner in the entity that then owned the subject property, she had been registered as a rent-stabilized tenant from August 1, 1993 until July 31, 1998, and that, even if she did not pay rent from August 1, 1998 through July

155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW          Page 5 of 17
YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT
ADMINISTRATION
Motion No.  002

5 of 17

31, 2001, that period was insufficient to establish that the unit was owner occupied for the four years necessary to allow for a subsequent "first rent." Moreover, the tenant alleged that the landlords did not even demonstrate that Kleinhut did not pay rent during this period, which would at least have bolstered their argument that the apartment was owner occupied. The tenant alleged that Kleinhaut was an illusory tenant after August 1, 2001 and that, in any event, inasmuch as the landlords were business entities and not persons, they did not and could not have "family members" occupy the apartment. The tenant further asserted that affidavits and voter registration records showed that Peter Rosch and Jeffrey and Meredith Clark resided in the apartment from 2002 through 2004, and that none of these individuals was related to any principal of the owner. In addition, the tenant alleged that there were no registrations filed during 2003 and 2004, and that, despite the landlords' claims that the apartment was owner occupied between 1999 and 2004, the prior owner filed no legal rent registration for 2004, thus making both the prior owner and the current landlords ineligible for rent increases, as provided by Rent Stabilization Law (RSL) § 26-517. The tenant ultimately argued that, inasmuch as all of the leases issued after 1998 were illegal, the apartment remained regulated, and that the issuance of those leases was part of a scheme fraudulently to deregulate the apartment, thus permitting the NYS DHCR to look back to the beginning of the scheme in determining an appropriate overcharge award under what is known as the "default" method.

In a determination dated November 19, 2021, NYS DHCR Deputy Commissioner Woody Pascal denied the tenant's PAR. He first concluded that the 2019 HSTPA did not apply to the tenant's claims, inasmuch as the Court of Appeals held, in *Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal* (35 NY3d 332 [2020]), that HSTPA did not apply to PAR proceedings addressed to rent overcharges that allegedly occurred prior to the effective date of that statute, which was the case with the tenant's initial administrative complaint. Pascal further found that there were insufficient indicia of fraud to permit the RA to

155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW          Page 6 of 17
YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT
ADMINISTRATION
Motion No. 002

6 of 17

look back further than the four years prior to the tenant's filing of the administrative complaint. Pascal went on to explain that,

> "[e]vidence before the RA shows that there was a temporary exemption due to owner occupancy prior to the Bulkley tenancy, which is supported by rent registrations, by the allegations of the parties, and by affidavits submitted by the owner. At the time of the tenancy of Cara [sic] Kleinhaut, who the tenant admits was a family member of one of the principles [sic] of the owning corporation and was the tenant during said temporary exemption, there was no requirement that such exemption last for four years, or for any specified duration, to allow the owner to charge a first agreed upon rent subsequent to such exemption period. Accordingly, it is not relevant when Ms. Kleinhaut vacated the apartment, or how long the period of her tenancy as a temporarily exempt tenant lasted."

Pascal rejected the tenant's contention that there was any relevance to the fact that the landlords failed to establish that Kleinhaut did not pay rent when she allegedly occupied the apartment as an owner's family member, since the fact that they contemporaneously registered the apartment as "TEMP EXEMPT . . .OWNER OCCUPIED" was sufficient, "given the fact that this tenancy ended 17-19 years ago, to support the owner's contention that she did in fact pay no rent during that time," a finding that also was supported by the affidavit of the wife of one of the owners of the building at the relevant time. He also rejected the tenant's contention that a family member of a principal of limited liability company or a limited partnership may not occupy the apartment for purposes of a temporary exemption, and that, "at the least, such relation is sufficient to support the findings that the prior owner had a bona fide belief that the temporary exemption at issue was allowed and that the owner did not, therefore, engage in fraud." Pascal thus concluded that, inasmuch as there was in fact a legitimate temporary exemption for owner occupancy, and that this temporary exemption ended upon vacatur of the apartment by Kleinhaut, the prior owner was permitted to charge an agreed upon rent to Bulkley, as the first tenant taking occupancy after that vacatur of the exempt tenant.

Pascal explained that, while the RSC required that the first agreed upon rent after a temporary exemption be set forth in a rent stabilized lease, "there was industry-wide confusion regarding this requirement at the relevant time," and that the NYS DHCR "was allowing Owners

**155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No.  002**

Page 7 of 17

and tenants to set first rents after temporary exemptions even if such rents were not set forth in a rent stabilized lease, as long as such agreed upon rent was less than the threshold for deregulation, which it was in this case." Hence, although Pascal found that the landlords should have set forth Bulkley's rent in a rent-stabilized lease, "the failure to do so, in light of the industry-wide confusion as explained above, does not evidence fraud."

Pascal further explained that, while the tenant did, in fact, submit affidavits from Peter Rosch, in which Rosch stated that he resided in the subject apartment for two to three months in early 2002, and from Jeffrey Clark, in which Clark stated that he and his wife lived in the apartment from mid-2002 to mid-2004, "there are no leases in evidence for those tenancies, and these affidavits do not state what the rent paid was during those alleged tenancies." Pascal thus found that the first verifiable tenancy after the temporary exemption arising from Kleinhaut's occupancy was Bulkley's tenancy, since she signed a lease beginning August 1, 2004, and that the first verifiable rent after such exemption had terminated was the rent of $1,900.00 per month set forth in that lease. Hence, Pascal wrote that it was reasonable for the RA to base his determination thereon. Since the lease history showed that Bulkley renewed her lease two times, for one year each time and at respective monthly rents of $1,919.00 and $1,957.00 and that, immediately subsequent to the last Bulkley lease, Feigenbaum and Jeffrey Mickelson signed a one-year lease beginning on August 1, 2007 at a monthly rent of $2,450.00, which was based on both a vacancy allowance and high-rent vacancy deregulation, the prior owner's deregulation of the apartment was legitimate. He explained that,

> "[w]hile the prior owner failed to contemporaneously file registrations subsequent to the temporary exemption, and failed to offer the first verifiable tenant after such exemption a rent stabilized lease, these failures, under the specific circumstances of this case, do not rise to the level of a fraudulent scheme to deregulate the apartment. Accordingly, the deregulation that occurred in 2007 was correctly found by the RA to be a bona fide deregulation."

Pascal ultimately noted that the temporary exemption at issue ended 17 to 19 years prior to his determination, that the deregulation occurred 14 years prior to that date, and that the tenant did

**155861/2023 IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No. 002**

Page 8 of 17

8 of 17

not file any complaint addressing these issues until March 2018, even though he took occupancy of the apartment in October 2009.

On January 14, 2022, the tenant commenced a CPLR article 78 proceeding against the NYS DHCR in the Supreme Court, New York County, under Index No. 150439/2022, seeking judicial review of Pascal's November 19, 2021 determination denying his PAR. Based upon the parties' stipulation, the court, in a decision and order dated June 14, 2022 (Love, J.), remitted the matter back to the NYS DHCR for further consideration of Pascal's determination.

After providing the parties with a notice of reconsideration on March 28, 2023, Pascal, in a determination made upon remittal dated May 11, 2023, vacated a portion of his prior determination, and thereupon granted the tenant's PAR in part. After first adhering to his prior determination that the HSTPA was inapplicable to the tenant's claim, Pascal vacated so much of his prior determination as concluded that the subject apartment no longer was subject to rent regulation, explaining as follows:

> "Review of the record shows that the first tenant after the temporary exemption was not offered a rent stabilized lease. The owner itself alleges that the first tenant after the temporary exemption was Erin Bulkley, who took occupancy on August 1, 2004 at a rent of $1,900.00 per month. Said lease states, at the top of page one, that it is a **"STANDARD FORM OF APARTMENT LEASE (FOR APARTMENTS NOT SUBJECT TO THE RENT STABILIZATION LAW)".** Nor was said lease registered with DHCR until March of 2018. Section 2526.1, of the Rent Stabilization Code (RSC) in effect in 2004 stated that the first rent after a temporary exemption 'shall be the rent agreed to by the owner and the first *rent stabilized* tenant taking occupancy after such . . . temporary exemption' (emphasis added)."

Pascal continued, explaining that,

> "[b]ecause the first rent after the temporary exemption was not with a 'rent stabilized tenant', as the tenant was given a non-stabilized lease, the apartment was not contemporaneously registered, and there are no indicia that Erin Bulkley was treated as a 'rent stabilized tenant', the owner was not entitled to an agreed upon first rent pursuant to such tenancy. Further, because the first rent after the temporary exemption was not with a stabilized tenant, none of the subsequent rents, which were based upon said first rent, were legal rents, and none of the rents from said first rent forward could be the basis for high rent vacancy deregulation of the subject apartment. Accordingly, the apartment has not been

**155861/2023 IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No. 002**

Page 9 of 17

9 of 17

legally deregulated, and the apartment was, and remains, subject to rent stabilization."

Pascal nonetheless rejected the tenant's contention that any of the factual underpinnings of the dispute evinced a fraudulent scheme on the part of any of the prior owners, or of the current landlords, to deregulate the apartment. As Pascal phrased it, "[w]hile there is conflicting evidence regarding the length of the temporary exemption occurring around 1999-2003 and regarding possible tenancies occurring after that exemption and prior to the Bulkley tenancy," it is "uncontested that there was in fact a temporary exemption due to owner occupancy, and that the owner contemporaneously registered the apartment as temporarily exempt due to owner occupancy from 1999 to 2003 inclusive, and at a legal rent of $0.00 for each registration year." Pascal concluded that,

> "[w]hile the parties make contradictory allegations regarding possible tenancies occurring after the temporary exemption and prior to the Bulkley tenancy, the Commissioner finds that the Bulkley tenancy is the first verifiable tenancy occurring after said exemption, as evidenced by leases and registrations filed before initiation of the instant proceeding. There are no registrations or leases for these alleged intervening tenancies. Nor is a strict determination regarding these alleged possible tenancies, occurring some 18-20 or more years ago, necessary, as it has been determined that the apartment is rent stabilized, and as the occurrence or non-occurrence of such tenancies does not show owner fraud given that there is no evidence or allegation that the owner has tried to claim or allege any such tenancies as a basis for deregulation of the apartment. Therefore, such potential tenancies, even if they did occur, do not in any way indicate that the owner was engaged in a fraudulent scheme to deregulate the apartment."

Pascal noted that Bulkley's initial registered rent was $1,900.00 per month, and thus was less than the then-existing threshold for deregulation, and that, although she renewed her lease for two lease terms, the rent increases for both renewals were less than the guideline increases allowed for rent stabilized apartments, remaining below the threshold for deregulation. He further noted that the current landlords ultimately registered the Bulkley leases as rent-stabilized and the subsequent Feigenbaum tenancy as a high-rent vacancy rent, and thus exempt from rent regulation and registration requirements. Pascal asserted that, while Bulkley's first lease

155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW           Page 10 of 17
YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT
ADMINISTRATION
Motion No.  002

10 of 17

was registered in March 2018, and the registrations for her second and third leases, as well as Feigenbaum's lease, were filed in January 2018---some 11 to 14 years after they were issued---those registrations were all, in fact, filed prior to the tenant's filing of the administrative complaint. This, according to Pascal, "demonstrate[d] that the [current] owner recognized that the apartment was rent stabilized for Ms. Bulkley's tenancy, erroneously believing that the apartment then became deregulated in 2007 when Mr. Feigenbaum took occupancy at a rent that exceeded the then threshold for deregulation."

Inasmuch as he concluded that there were insufficient indicia of a fraudulent scheme to deregulate the tenants' apartment, and that HSTPA's enlargement of the proper "look back" period to six years was inapplicable to the tenant's complaint, which was filed before HSTPA was enacted in 2019, Pascal determined that he could only "look back" four years from the date that the tenant filed his administrative complaint to determine the base date for awarding reimbursement for any rent overcharge. In connection with this analysis, Pascal found that there was no dispute that the prior owner charged the tenant $1,900.00 per month in March 2014, which was four years prior to the filing of the complaint on March 30, 2018, and which is the base date pursuant to the RSC in effect at the relevant time. Further, he found that the tenant's rent remained $1,900.00 per month even after 30 West 88 Realty, LLC, acquired the building in 2015, remained at that rate through the March 30, 2018 filing of the administrative complaint, and continued at that rate through to the issuance of the RA's May 28, 2021 determination that Pascal was reviewing. Pascal concluded that, "[a]ccordingly, the apartment is rent stabilized as explained above." Nonetheless, Pascal held that "because the legal base date rent is the $1,900.00 per month rent charged on the base date, as explained above, and because the tenant has not been charged any rent above this rent at any time prior to the issuance of the Rent Administrator's Order, *there have been no overcharges in this case*" (emphasis added). He further directed the landlords to "furnish the tenant in occupancy with a

155861/2023 IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION
Motion No. 002

Page 11 of 17

11 of 17

[* 11]

rent stabilized lease at a rent that is based upon the legal rent set forth in this Order, plus lawful increases, within thirty days of the issuance date of this Order."

The tenant commenced this proceeding on June 30, 2023. The landlords commenced the related proceeding on July 10, 2023. In an order dated March 29, 2024, this court granted the tenant's motion to consolidate his CPLR article 78 proceeding with the landlords' proceeding, denied that branch of the landlords' motion which sought to dismiss the petition in the initial proceeding for the tenant's alleged failure to join them as necessary parties therein, granted that branch of the landlords' motion which sought leave to intervene in the initial proceeding, and deemed the landlords' petition in the related proceeding to be a cross petition in the consolidated proceeding.

Where, as here, an administrative determination is made, and there is no statutory requirement of a trial-type hearing, that determination must be confirmed unless it is arbitrary and capricious, affected by an error of law, or made in violation of lawful procedure (*see* CPLR 7803[3]; *Matter of Adirondack Wild Friends of the Forest Preserve v New York State Adirondack Park Agency,* 34 NY3d 184, 191 [2019]; *Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off*., 33 NY3d 131, 135 [2019]; *Matter of Lemma v Nassau County Police Officer Indem. Bd*., 31 NY3d 523, 528 [2018]; *Matter of McClave v Port Auth. of N.Y. & N.J*., 134 AD3d 435, 435 [1st Dept 2015]; *Matter of Batyreva v New York City Dept. of Educ*., 50 AD3d 283, 283 [1st Dept 2008]; *Matter of Rumors Disco v New York State Liquor Auth*., 232 AD2d 421, 421 [2d Dept 1996]). Neither the tenant not the landlords argued that the DHCR's determination was made in violation of lawful procedure. Thus, the determination must be confirmed if it was not arbitrary and capricious and was not affected by an error of law.

A determination is arbitrary and capricious where it is not rationally based, or has no support in the record (*see Matter of Gorelik v New York City Dept. of Bldgs.*, 128 AD3d 624, 624 [1st Dept 2015]), or where the decision-making agency fails to consider all of the factors it is

**155861/2023 IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No. 002**

**Page 12 of 17**

12 of 17

required by statute to consider and weigh (*see Matter of Kaufman v Incorporated Vil. of Kings Point*, 52 AD3d 604, 608 [2d Dept 2008]). Stated another way, a determination is arbitrary and capricious when it is made "without sound basis in reason and is generally taken without regard to the facts" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 231 [1974]). Consequently, an agency determination is arbitrary and capricious where the agency provides only a "perfunctory recitation" of relevant statutory factors or other required considerations as a basis for its conclusions (*Matter of BarFreeBedford v New York State Liq. Auth.,* 130 AD3d 71, 78 [1st Dept 2015]; *see Matter of Wallman v Travis*, 18 AD3d 304, 308 [1st Dept 2005] ["perfunctory discussion"]), provides no reason whatsoever for its determination (*see Matter of Rhino Assets, LLC v New York City Dept. for the Aging, SCRIE Programs*, 31 AD3d 292, 294 [1st Dept 2006]; *Matter of Jones v New York State Dept. of Corrections & Community Supervision*, 2016 NY Misc LEXIS 15778, *1-2 [Sup Ct, Erie County, Jul. 28, 2016]), or provides only a post hoc rationalization therefor (*see Matter of New York State Chapter, Inc., Associated Gen. Contrrs. of Am. v New York State Thruway Auth*., 88 NY2d 56, 756 [1996]; *Matter of L&M Bus Corp. v New York City Dept. of Educ*., 71 AD3d 127, 135 [1st Dept 2009]).

"Courts have rarely singled out error of law by name . . . as a question for consideration in an Article 78 proceeding" (Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 7803:1). "The question of whether an administrative agency's determination is affected by an error of law is often implicit in the nature of the grievance, and will often turn on the underlying substantive law applicable to the determination" (*Matter of Held v State of New York Workers' Compensation Bd.,* 2008 NY Slip Op 52741[U], *7, 2008 NY Misc LEXIS 10881, *20-21 [Sup Ct, Albany County, Jul. 7, 2008]; *see also* 14-7803 Weinstein-Korn-Miller, NY Civ Prac P 7803.01[3]). Hence, an administrative determination is affected by an error of law where the agency incorrectly interprets or improperly applies a statute, regulation, or

**155861/2023 IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No. 002**

**Page 13 of 17**

13 of 17

rule (*see Matter of New York State Pub. Empl. Relations Bd v Board of Educ. of City of Buffalo,* 39 NY2d 86, 92 [1976]; *see generally Matter of CVS Discount Liquor v New York State Liq. Auth.*, 207 AD2d 891, 892 [2d Dept 1994]), or where its determination violates some other statutory or constitutional provision (*see Matter of New York State Pub. Empl. Relations Bd v Board of Educ. of City of Buffalo,* 39 NY2d at 93 [Fuchsberg, J., concurring] ["an order which is specifically and expressly forbidden by . . . statute is an error of law"]).

"While agency interpretations of their own regulations are generally afforded considerable deference, courts must scrutinize administrative rules for genuine reasonableness and rationality in the specific context presented by a case" (*Matter of Murphy v. New York State Div. of Hous. & Community Renewal*, 21 NY3d 649, 654-655 [2013] [citations and internal quotation marks omitted]; *see Kuppersmith v Dowling*, 93 NY2d 90, 96 [1999]; *Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359 [1999]; *Matter of Gaines v New York State Div. of Hous. & Community Renewal,* 90 NY2d 545, 548-549 [1997]).  "While as a general rule courts will not defer to administrative agencies in matters of pure statutory interpretation, deference is appropriate where the question is one of specific application of a broad statutory term (*Matter of O'Brien v Spitzer*, 7 NY3d 239, 242 [2006] [citations and internal quotation marks omitted]; *see Matter of KSLM-Columbus Apts., Inc. v New York State Div. of Hous. & Community Renewal*, 5 NY3d 303, 312 [2005]; *Matter of American Tel. & Tel. Co. v State Tax Comm*., 61 NY2d 393, 400 [1984]).  The court concludes that the NYS DHCR, in interpreting the scope of its authority to determine an administrative complaint, as set forth in its own regulations, rationally applied its understanding of those regulations, rationally concluded that prior owner of the subject building never properly deregulated the apartment, rationally concluded that the subject apartment is rent-stabilized.

As relevant here, prior to the enactment of Part D of the 2019 HSTPA (L 2019, ch 36, part D, § 4), which abolished luxury deregulation, the luxury deregulation of rent-stabilized

155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION
Motion No.  002

Page 14 of 17

14 of 17

apartments had been triggered either when (a) a unit became vacant and the legal regulated rent, inclusive of vacancy increase allowances and increases permitted for landlord improvements (*see Altman v 285 W. Fourth, LLC*, 31 NY3d 178 [2018]), thereupon exceeded $2,000.00 per month ($2,500.00 after June 24, 2011; see L 2011, ch 97) (high rent vacancy deregulation), or (b) the legal regulated monthly rent of the unit exceeded $2,000.00 ($2,500.00 after June 24, 2011) and the tenants' annual household income exceeded $175,000.00 for two consecutive years (high rent/high income deregulation) (*see* Admin. Code of City of NY former §§ 26-403.1, 26-504.1). While the NYS DHCR rationally concluded that, between 2004 and January 2018, the subject apartment should have been deemed to have been rent-stabilized, in fact, the "apartment was never properly treated by any owner as rent-stabilized" (*Matter of AEJ 534 East 88th, LLC v New York State Div. of Housing & Community Renewal*, 194 AD3d 464, 471 [1st Dept 2021]). Thus, the NYS DHCR held that, although the apartment should have been treated as rent-stabilized by the prior owner during the entirety of Bulkley's 2004-2007 tenancy, the prior owner nonetheless improperly tendered Bulkley a standard apartment lease rather than a rent-stabilized lease, and never registered the apartment as rent-stabilized at any time during the 12 years from 2004 to 2015, when it transferred ownership to 30 West 88 Realty, LLC. Moreover, after the current landlords took possession of the building in 2015, it took them 3 additional years to register Bulkley's leases as rent-stabilized, which was almost 9 years after the tenant began his own occupancy, and, suspiciously, only two months before the tenant filed his administrative complaint with the NYS DHCR. Inasmuch as the apartment was never properly or timely treated by any owner as rent-stabilized, "it could not have been removed from rent-stabilization based on high-rent vacancy deregulation" (*id*.). Hence, it was lawful and rational for the NYS DHCR to have concluded that the apartment never lost its status as a rent-stabilized unit, and its determinations that the tenant's apartment is still subject to rent

155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION
Motion No.  002

Page 15 of 17

15 of 17

stabilization, thus obligating the landlords to offer him a rent-stabilized renewal lease, were rationally based, had support in the record, and were not arbitrary and capricious.

The NYS DHCR also rationally concluded that, under the circumstances presented here, neither the prior owner nor the current landlords overcharged the tenant during the course of his tenancy, since the rent that the prior owner charged Bulkley from 2004 to 2007 was lawful, and the amount that they have been charging the tenant has remained steady at $1,900.00 per month for at least 10 years, and is actually less than the prior owner charged Bulkley during 2006-2007.

In addition, the NYS DHCR rationally and lawfully concluded that there were insufficient indicia that either the prior owners or the current landlords engaged in a fraudulent scheme to deregulate the subject apartment. It further rationally and lawfully concluded that the 2019 HSTPA's new six-year look-back period applicable to garden-variety rent overcharge claims, its alteration of the method for determining legal regulated rent for overcharge purposes, and its substantial expansion of the nature and scope of owner liability in rent overcharge cases (*see* L 2019, ch 36, § 1, part F) may not retroactively be applied to this dispute, in which the administrative complaint was filed in 2018 (*see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal,* 35 NY3d 332 [2020]).

There is no merit to the parties' remaining contentions, insofar as they relate to their respective challenges to the NYS DHCR's May 11, 2023 determination.

Accordingly, it is,

ORDERED that the petition of Stephen Cheng is denied; and it is further,

ORDERED that the cross petition of 30 West 88 Realty, LLC, and SM 30W88, LLC, is denied; and it is further,

ADJUDGED that this consolidated proceeding is dismissed.

**155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No.  002**

**Page 16 of 17**

This constitutes the Decision, Order, and Judgment of the court.

_____
**12/23/2024**
**DATE**

_____
**JOHN J. KELLEY, J.S.C.**

| PETITION: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | | GRANTED | X DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |
| CROSS PETITION: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
| | | GRANTED | X DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**155861/2023   IN THE MATTER OF THE APPLICATION OF STEPHEN CHENG vs. STATE OF NEW YORK DIVISION OF HOUSING AND COMMUNITY RENEWAL OFFICE OF RENT ADMINISTRATION**
**Motion No.  002**

**Page 17 of 17**

17 of 17

[* 17]